### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT SAVANNAH,

### JANUARY TERM, 1856.

Present—JOSEPH H. LUMPKIN, ⎫
HENRY L. BENNING, ⎬ *Judges.*
CHAS. J. McDONALD. ⎭

No. 44.—THE CENTRAL RAIL ROAD & BANKING COMPANY, plaintiff in error, *vs.* HINES, PERKINS & Co. defendants in error.

[1.] A party on the record who, at the trial, has no interest in the event of the suit, may be examined as a witness.

[2.] It is not error to refuse instructions to the Jury asked for, if there is nothing in the evidence to warrant them.

Case, in Chatham Superior Court. Tried before Judge FLEMING, May Term, 1855.

This action was brought by Hines, Perkins & Co. *vs.* The Central Rail Road & Banking Company, as common carriers,

for an amount of lumber burned while lying on the road side awaiting transportation. On the trial, Malcolm C. Perkins, one of the plaintiffs, was offered as a witness; and at the same time, it was admitted that he ceased to be interested in the case, except as to costs. To relieve that disqualification, plaintiffs deposited with the Clerk a sum of money more than sufficient to cover the costs. The Court admitted the witness to testify, and this is the first error assigned.

It appeared from the evidence, that the lumber was not delivered at a station or depot, but was placed at the 22 mile post. The R. R. Co. had previously received lumber at the same point, and there was some evidence to show that the conductor and superintendent of freight trains had agreed to transport the lumber from that point on a specified day, shortly after the fire, which arrangement had been acquiesced in by the plaintiffs.

The Court charged the Jury—

1st. That common carriers, in Georgia, are *insurers* of all goods intrusted to their care, and are responsible for every injury sustained by them, except injuries resulting from the act of God or the public enemy.

2d. That this Common Law liability could not be varied or limited by notice or special acceptance. That the law, making common carriers insurers, and putting it out of their power to vary or limit their liability, seemed harsh, but it was founded on considerations of public policy. That, at any rate, the Supreme Court of Georgia, in the case of *Fish vs. Chapman & Rose*, had decided that such was the Common Law in 1776, and that this Common Law was made obligatory upon the Supreme Court by our Adopting Statute. If obligatory upon the Supreme Court, of course obligatory upon this Court. In this view of the subject, the effect of our Adopting Statute is equivalent to an enactment that common carriers, in Georgia, shall be liable as insurers, and that this liability shall not be varied or limited by notice or special acceptance. That this was an answer to all the cases cited, showing that this doctrine had since been modified, for there

SAVANNAH, JANUARY TERM, 1856.    205

The Cent. R. R. & B. Co. *vs.* Hines, Perkins & Co.

was no evidence of any similar Statute in the States, where the modification had been recognized.

3d. That it was not necessary to prove carelessness or negligence in the common carrier. This was only necessary, where the doctrine of notice and special acceptance was held to be law, and then admitted for the purpose of making the common carrier liable, notwithstanding his notice or special acceptance.

4th. That if these principles be true, the case must turn upon the question whether this lumber had ever been delivered to the defendant. On this subject the Court charged, that it was not necessary, to constitute a delivery, that the delivery should be at a station or depot. The Court would not, however, be understood as charging that individuals could deposit goods along the road anywhere and everywhere, and that such deposit would be a delivery. I mean only to say that goods may be delivered at any point agreed upon by the parties, although the point may not be a station or depot. Whether the 22 mile post was such a point, is a question of fact for the Jury. If the Jury find the fact of delivery, the defendants are liable; if there was no delivery, the defendants are not liable.

Counsel for defendants then requested the Judge to charge the Jury—

1st. That defendant might limit its Common Law liability by notice brought home to the plaintiffs.

2d. That a special contract could be entered into between plaintiffs and defendant, and that such contract could only be nullified by negligence or fraud on the part of the defendant.

3d. That a deposit of lumber on the side of a rail road, at a point where there was no station and no agent of said rail road, was not, in law, a good delivery.

The Judge refused so to charge.

The errors assigned are—

1st. That the Court erred in admitting the testimony of Malcolm C. Perkins, a party to the record, liable to distrib-

The Cent. R. R. & B. Co. *vs.* Hines, Perkins & Co.

utive costs; and therefore, an interested and incompetent witness.

2d. That the Court erred in instructing the Jury, that the Common Law liability of defendant could not be varied or limited by notice or special acceptance.

3d. That the Court erred in refusing to instruct the Jury that defendant might limit its Common Law liability, by notice brought home to the plaintiffs.

4th. That the Court erred in refusing to instruct the Jury, that a special contract could be entered into between plaintiffs and defendant, and that such contract could only be nullified by negligence or fraud on the part of the defendant.

5th. That the Court erred in refusing to instruct the Jury that a deposit of lumber on the side of a rail road, at a point where there was no station and no agent of said rail road, was not, in law, a good delivery.

GORDON, for plaintiff in error.

NORWOOD & WILSON, for defendants in error.

The Court not being unanimous, delivered their opinions *seriatim.*

*By the Court.*—MCDONALD, J. delivering the opinion.

It becomes my singular duty to deliver the opinion of the Court, while I dissent, in part, from its judgment. This I shall proceed to do, and I shall then assign the reasons which have induced me to differ from my brethren, on the point of disagreement.

The errors assigned in the record are—

1. That Malcolm C. Perkins being a party to the record, and therefore an interested and incompetent witness, ought not to have been allowed to testify.

2. That the Court instructed the Jury that the Common

SAVANNAH, JANUARY TERM, 1856.    207

The Cent. R. R. & B. Co. *vs.* Hines, Perkins & Co.

Law liability of defendant, as a common carrier, could not be varied or limited by notice or special acceptance.

3. That the Court refused to instruct the Jury that defendant might limit its Common Law liability by notice brought home to the plaintiffs.

4. That the Court refused to instruct the Jury that a special contract could be entered into between plaintiffs and defendant, and that such contract could only be nullified by fraud or negligence on the part of the defendant.

5. That the Court refused to instruct the Jury, that the deposit of lumber on the side of a rail road, at a point where there was no station and no agent of said rail road, was not, in point of law, a good delivery.

1. It is the opinion of a majority of the Court, and therefore, the ruling of this Court, that the Circuit Judge committed no error in allowing Malcolm C. Perkins to be sworn as a witness on the trial of this cause.

It is true, that at the time of the institution of the suit, he was a party to the record and a party in interest; but before the trial, he had sold and assigned his interest in the firm of Hines, Perkins & Co. and was indemnified, so far as the costs were concerned, so that, when offered as a witness, he had no interest in the suit, though he was still a party to it. The Court being of opinion that the only reason for the exclusion of a party to the record from being a witness, is the interest he has in the cause, believe that when that objection is removed, he may be sworn as other witnesses; and if any objection remain, it goes to his credit, and the Jury will judge of that. Elementary writers on evidence, of great reputation, put the exclusion of a party to the suit on the record, as a witness in his own favor against the adverse party, on the immediate and direct interest which he has in the event of the suit. (1 *Phillipps' Ev.* 69; *Norris' Peake*, 219 ; 1 *Starkie, on Ev.* 105.)

The identical point now under consideration, was expressly adjudicated in the case of *Willings & Francis et al. vs. Consequa*, (1 *Peter's C. Ct. Rep.* 307,) and the party to the suit

divested of all interest, was adjudged to be a competent witness. In Pennsylvania, similar decisions have been made, and the majority of the Court, here, believing that the *interest* of the party, in the event of the suit, lies at the foundation of the rule which renders incompetent the party to the record, as a witness, hold and adjudge that when that interest is removed, the disqualification ceases, and he may be examined as a witness.

2. We now come to the consideration of the charge of the Court. Whether the presiding Judge was right in charging the Jury as he did, and in refusing to instruct the Jury as requested by defendant's Counsel, depends on the evidence submitted in the cause. The proceedings in the Court below exhibit no proof of any notice given by defendant, brought home to the plaintiffs; nor any special acceptance of the lumber by defendant, by which its Common Law liability, as a common carrier, could be varied or limited; nor do they show that any special contract for such a purpose was set up or proved.

The whole of the proof, so far as it appears in the record, was directed to the point, *whether the lumber had been delivered to and received by the defendant, before it was burnt;* and the Judge before whom the cause was tried, in his charge to the Jury, put the liability of the defendant on that issue. To have given the instructions to the Jury contained in the first and second requests of defendant's Counsel, there having been nothing in the evidence to warrant them, would have been error. It was not error to refuse them.

In regard to the third instruction asked, it may be remarked, that as an abstract legal proposition, it is correct as stated; but it is not true that the defendant could not, by its agreement, make such a delivery a good one; and that was the question in this case. The evidence was mainly directed to the proof of this issue. On the one hand, it was proven that defendant had hauled lumber for the plaintiffs from the same point before; that the lumber had been lying by the road for five or six weeks before the burning; that the super-

intendent of the freight train was applied to, almost every day during the month of March, to haul the lumber; that the conductor of one of the freight trains had, about the middle of March, hauled one load and had promised to haul another the next day, but the train was taken away from him and he did not haul it; that a train intended for plaintiffs, was once taken and sent to Macon for cotton. The defendant never objected to the place to which the lumber was carried. These things might well have been considered by the Jury, in determining whether the lumber had been delivered to and received by the defendant. On the other hand, it was equally proper for them to have considered, as repelling such conclusion, the evidence, that the platform on which the lumber was piled, was the plaintiff's own platform; that the plaintiffs sometimes chartered a train and carried their own lumber; that there was neither a station nor an agent of the defendant at the point where the lumber was deposited; that it was the custom of the road to haul lumber at the road, a convenience which was known to plaintiffs, who always acted under it; that the plaintiffs were hauling lumber down to the day preceding the night of the fire; that on the Saturday before the fire, the superintendent of freight trains offered to carry one load, but one of the plaintiffs said a part could be of no use to him; he would like to have it hauled together; and it was arranged that it should all be carried down on the following Saturday. Before that time arrived, the lumber was burnt.

Hence, it will be perceived, that it was by the plaintiffs insisted, that the lumber had been received by the defendant before the burning; while, on the other hand, it was contended, that although deposited there, it had never been delivered to and received by defendant. The Jury, alone, could determine the question, and the charge of the Court seems to have been sufficiently explicit on this point, when he declared that he would not be understood as charging that individuals could deposit goods along the road, anywhere and everywhere, and that such deposit would be a good delivery.

There was no evidence to justify the instructions to the Jury, asked for by the plaintiff's Counsel, in their first and second requests; nor was there any for the charge of the Court, as given, on the points to which said requests were directed. But no error is assigned on that account.

It may not be amiss to say here, however, that the point in the case of *Fish vs. Chapman & Ross*, was, whether the special contract constituted the plaintiff in error a common carrier, and not whether it restricted his liability as a common carrier. The Court held that he was liable on his contract, under the facts in proof, and that as his contract imposed on him more onerous terms than the law does on common carriers, on their ordinary contracts, the charge of the Court, that he was liable as a common carrier, could have had no improper influence with the Jury against him. The doctrine of notice and special acceptance, was learnedly and ably discussed; and although it was not necessarily involved in the question before the Court, we approve of it generally.

A party to a contract cannot, of his own will, change the law of that contract, nor can a man, by giving notice, abrogate the law or change a rule of law, which attaches to the business in which he is engaged, a peculiar liability. But we are not to be understood to say, that he may not make a contract, when he makes it on equal terms with those with whom he deals, to mitigate the hardships of a legal rule, which exposes him to apparently unreasonable liabilities, when that contract is not forbidden by any principle of the Statute or Common Law. The argument and consideration of this case, have suggested some points of vast interest to the community and to rail road companies. Do they stand on the precise footing of other common carriers in all respects? Or, are they not bound, in consequence of the extraordinary privileges they enjoy, to provide ample means for the transportation of all produce and commodities that may be offered at either terminus, or along the line of the road, and to receive and carry the same within a reasonable time? Whether, if they have the power of restricting their liability by a special.

agreement, such agreement can be demanded of a freighter who brings his produce or merchandize, at great expense and inconvenience, to the road, without any knowledge that such requirement will be made ?   Whether, if unreasonable terms are imposed, under any circumstances, they will be sustained ? None of these things can now be decided ; and it is sufficient to say, in this case, that the judgment of the Court below is affirmed.

I proceed, now, to assign my reasons for dissenting from that part of the decision of the Court which adjudges that Malcolm C. Perkins was a competent witness on the trial of the cause.   Though his interest had been removed, he was a party to the record, and a party to the issue to be tried.   If it be a rule of law, that a party to the suit is an incompetent witness to testify in the cause, and it stands alone as a rule of law, independent of a reason, it cannot be annulled by attaching thereto a conjectural reason, and holding that that reason, under particular circumstances, does not exist.   Commentators on the Law of Evidence, not satisfied with stating the rule of law, have undertaken to give a reason for it ; and as parties to the suit are always to be presumed to have a direct interest in the event of it, they have assigned that convenient reason as the only reason for it.   But the reason, as stated, is by no means as ancient as the rule itself, and constitutes no part of it.   I do not mean to say, that it was not among the motives that led to the establishment of the rule. Whether the law, in regard to the competency of witnesses, has its foundation in " a Statute worn out by time," or derives its authoritative force from the immemorial usage of Courts in their administration of justice, it is the law, and the law independent of a reason.

But learned and distinguished writers on the laws of England, and on the particular law of evidence, have conceived that there might be other reasons for rendering the party to the suit incompetent, besides his interest in the event of the suit.   Sir *William Blackstone* says, that " to avoid all temptations to perjury, the law of England lays it down as an in-

variable rule, that '*nemo testis esse debet in propria causa.*' "
In 1 *Gilbert on Evidence*, the general rule is stated to be,
"that no man can be a witness for himself." He speaks of
the rule as universal in civil matters. Mr. *Greenleaf* states
the general rule of the Common Law to be, that a party to
the record in a civil suit, cannot be a witness for himself or a
co-suiter in the same cause. "This rule of the Common
Law;" he remarks, "is not founded solely, in the considera-
tion of interest, but partly also, in the general expediency of
avoiding the multiplication of temptations to perjury."

That this rule of the Common Law, is not founded exclu-
sively on the interest that the party has in the event of the
suit, if it be needful to go into that inquiry, is deducible from
the fact, that according to the rule of the Common Law, a
party to the suit cannot be compelled, against his will, to
give evidence against his interest for his adversary; while
a witness not a party to the suit, but interested in the event
of the suit, is not competent, and cannot be allowed to give
evidence at the instance of the party in favor of whom his in-
terest inclines, but the opposite party, against whom his in-
terest is, may compel him to testify. If it be interest alone
that disqualifies, why not compel the party to the suit to tes-
tify against his interest as well as the witness who is not a
party? The Courts have never felt authorized, proceeding
upon the reason of the thing, to change this rule. It has
been changed, however, but it required the power of the Le-
gislature to do it. It is to be hoped that this innovation will
work well in practice. Less difficulty is certainly likely to
result from it, than will probably ensue from the establish-
ment of a rule which will place it in the power of a party to
the issue, to make merchandize of his oath, by selling and as-
signing his interest in his own suit, and then give evidence to
sustain it. It is a temptation; and although honest and hon-
orable men will not be seduced by it, it is to be feared that
such men may become the victims of unscrupulous adversaries.
We should take human nature as it is, liable to the control of
selfish influences, and save the administration of justice, as

far as possible, from the effects of its imperfections. An old and eminent writer, who believed that the rule in this case was one of universal exclusion, remarks of it, that "it preserves infirmity from a snare and integrity from suspicion, and keeps the current of evidence, thus far at least, clear and uninfected."

Modern cases which go to the extent of admitting the party to the suit as a competent witness, when his interest is removed, are predicated on the supposed exclusive reason for the rule, and not on the rule itself. Harris the case of *Willings & Francis et al. vs. Consequa*, in 1 Peters' Circuit Reports. In no old reported case, have I been able to find a a departure from the rule, on the ground that the interest of the party to the suit had been removed, and that he was, therefore, a competent witness.

The case last referred to, that of *Willings & Francis et al. vs. Consequa*, has been strongly disapproved by the Supreme Court of the United States. "They think it is not sustained by principle or authority." (12 *Peters' Rep.* 149.) The same Court determined, in the case of *John F. Stein vs. William Bouman et al.* that the objection to the competency of a party, does not arise so much from the small pecuniary liability to the payment of costs as to that strong bias which every party to a suit must naturally feel. (13 *Pet. R.* 219.) The same doctrine is reiterated in the case of *Bridges et al. vs. Armour et al.* (5 *Howard's U. S. Sup. Ct. R.* 94.) In the case of *Norton vs. Woods & Woods*, (5 *Paige's R.* 251,) it was said that a partner who had assigned all his interest in the demands and effects of the firm to his co-partner, who brings an action at Law in the name of both, for a co-partnership demand, could not be examined as a witness by *the defendant*, on the ground that he was a party to the record. Cases are collected and referred to in *Cowen & Hill's Notes on Phillips' Ev.* 134 *and* 1548, to the same effect, as well as others which seem to support the opposite principle.

In the case of *The King vs. The Inhabitants of Woburn*, Lord *Ellenborough* held that the person who was offered as

:214       SUPREME COURT OF GEORGIA.

The Cent. R. R. & B. Co. *vs.* Hines, Perkins & Co.

a witness on the trial of that cause, was inferentially a party
on the record; and that it was a long established rule of evi-
dence, that a party to the suit cannot be called on against
his consent, by the opposite party, to give evidence. (10
*East. R.* 395.)

It will be found, on an examination, that the cases cited to
sustain the principle, that a party to the suit who has no in-
terest in the event, may be a witness, fall short of it.   In the
case in 17 *Pickering*, the witness was not a party on the re-
cord, but was rejected because of his interest, he having con-
veyed, with warranty, real estate attached on plaintiff's writ.
The Court rejected him, although he testified that he consid-
ered himself fully indemnified against his covenants, and felt
no interest in the event of the suit.

In the case in 2 *Espinasse*, the defendant who was offered
as a witness, had let judgment go by default, and was no
party to *the issue* to be tried.

The case in 16 *Pickering*, was decided partly on a Statute
of Massachusetts.   The defendant sworn had been defaulted.

In the case in 13 *Johnson*, it was not the party to the suit
who was offered as a witness, but the Attorney who was lia-
ble for the costs, and he was objected to on that ground.
Plaintiff gave to defendant a bond of indemnity for the costs,
and defendant acknowledged the sufficiency of the obligors.

The case in 6 *Barbour's Rep.* places the rule which ex-
cludes the party to the suit from being a witness, on the true
ground, viz: that it is founded partly on the interest which
he has in the event of the suit, and partly on public policy.
It also presents a pretty full examination of the cases on the
subject, and very properly draws a distinction between par-
ties *on the record*, and parties *to the issue to be tried.*   One
of the strongest, and perhaps the strongest, English case cited
by Counsel for defendant in error, is the case of *Worrall vs.
Jones, Baker & Jones*, (7 *Bing.* 395,) and in that the de-
fendant, who was offered as a witness, had suffered judgment
by default, and was no party to the issue to be tried.

The ruling of the Court in that case was, that "when the

The Cent. R. R. & B. Co. *vs.* Hines, Perkins & Co.

party to the suit had suffered judgment by default, waives. the objection and consents to be examined, and is called against his own interest, there is no ground, either on principle or authority, for rejecting him."

This Court has held, that where one of two joint defendants does not appeal from a verdict rendered against both,. but an appeal is entered by the other, the party not appealing is a competent witness on the appeal trial.   In such case, the whole record goes up; and he is, therefore, a party on the record, but he is no party to the issue to be tried.

The rule as contended for, is not an equal one.   Plaintiffs may always remove the disqualification, and defendants. rarely ever.

I think, therefore, upon a full view of the case, that the judgment of the Court below, admitting Malcolm C. Perkins. to be examined as a witness, ought to be reversed.

BENNING, J.

In all the points of this case except one, the members of the Court are unanimous.

That one is the decision of the Court below, to the effect that Perkins, one of the plaintiffs, having assigned his interest in the partnership to his co-partners, became a competent witness for the plaintiffs as soon as they had deposited with the Court one hundred dollars, to be applied to paying the costs, if the costs should fall on the plaintiffs.

That decision, I think, was right.

In *Worrall vs. Jones* (7 *Bing.* 395) *Tindal* C. J. delivering the opinion of the Court says: "No case has been cited, nor can any be found, in which a witness has been refused, upon the objection in the abstract, that he was a party to the

suit: on the contrary, many have been brought forward, in which parties to the suit, who have suffered judgment by default, have been admitted as witnesses against their own interest; and the only inquiry seems to have been, in a majority of the cases, whether the party called was interested in the event or not; and the admission or rejection of the witness has depended on the result of this inquiry."

This statement, in my opinion, is strictly true. No case of the kind referred to in the statement has been cited before this Court since I have been a member of the Court, although two opportunities have existed for the citation of such a case —one on the hearing of this case, and one on the hearing of the case of *Kilpatrick vs. Wooten,* a case returned to Decatur Term, 1855. In these cases, the discussions too, were by different sets of Counsel, and were both able.

The decision of the said case in *Bingham's Reports* was, that a defendant in debt, who was the principal in the contract, and who had suffered a judgment by default, was a competent witness for the plaintiff in an issue, raised between the plaintiff and another defendant, who was a surety for that defendant, although this defendant, the surety, objected to his being sworn.

Here the person sworn was still a *party.* to the case. That a judgment by default had been rendered against him, did not make him cease to be a party to the case.

In cases of *tort* it is every day's practice to make decisions similar to this.

Lord Chief Baron *Gilbert*, in his work on Evidence, says: " Concerning persons interested in the matter in question, the general rule is, that no man can be a witness for himself."

After discussing this rule he says: " From this rule concerning interest a corollary may be deduced."

" That the plaintiff or defendant cannot be a witness in his own cause; for these are the persons that have a most immediate interest."

That a party cannot be sworn in his own cause is, then, according to the Chief Baron, not a rule in itself, but is a cor-

ollary from a rule—the rule that a person cannot be a witness to support his own interest.

Of course, the Chief Baron would have to say, that in a case in which the rule does not exist, the corollary does not exist.

Not only is there no decision of which I am aware, to the effect that a person who is a party to a case, is, merely because he is a party, although he has no interest in the case, incompetent to be sworn as a witness in it, but there is, besides the cases of default to which I have referred, at least one decision to the precise effect, that such a person is competent to be sworn as a witness in such a case.   It is the decision of the Circuit Court of the U. S. (*Washington,* J.) in *Willings vs. Consequa,* (1 *Pet. C. C.* 301, cited in notes to *Phill. Ev.* 137,) a case very much like the one now before this Court.   The Judge says, " The general rule of law certainly is, that a party to a suit cannot be a competent witness.   But it is equally so, that the interest which that party has in the event of the suit, both as to costs and the subject in dispute, lies at the foundation of the rule, and when that interest is removed, the objection ceases to exist.   In this case, the assignment has terminated the interest of H. in the subject for which the suit is brought—as to the costs they are paid by the assignees, now the only real plaintiffs on record."

This decision has never, I believe, been over-ruled.   It is true, that Judges of the Supreme Court of the U. S. have, in the course of delivering opinions in cases not analogous to this—in cases in which the person objected to as a witness, though a party, was yet a party, not freed from interest in the suit, at least not from interest in the costs, allowed themselves to say that this decision was not law.   (See 5 *How.* 91.)   Judges of other Courts in some of the States, have indulged in remarks of the same sort.   But *dicta* that are aside from the case in which they are made, are not worth much —not as much as a decision, though that be one which they condemn.

This decision is in accordance with what I understand to

be the rule of the Common Law, viz: that it is interest which is the thing that disqualifies, and not the being or not being a party to the suit.

The whole argument, *ab inconvenienti*, is in favor of this being the rule. In swearing a person as a witness, the object is to obtain the truth. Why is not this object as well accomplished by the swearing of one disinterested person as by the swearing of another disinterested person? What difference can the fact make that one of them may be named in the case as a party and the other not? But unless there is a difference ought there to be a distinction? Ought that source of opprobrium to the Courts, if not to the law itself, at this day, to receive any additional supplies?

I think the decision of the Court below, admitting the witness, ought to be affirmed.

Lumpkin, J.

Was Malcolm C. Perkins a competent witness to testify in behalf of the plaintiffs?

At the commencement of the suit, he was one of the firm of Hines, Perkins & Co. and is still a party to the record, although he has sold out his entire interest in said firm. Under a rule of Court obtained for that purpose, an amount admitted to be sufficient to pay all costs which might accrue in the case, was deposited in the Clerk's office; so that the question is presented, is one who has no interest, whatever, in the event of the suit, disqualified from testifying, solely because he is a party to the record?

This is an open question, upon which different Courts, both English and American, have had their different views. What I mean to say is, that while it is laid down in all the books

that a party to a suit at Common Law cannot be a witness, and that it may be truly asserted that this rule is univeral; yet, I take it upon myself to affirm, after the most thorough examination and upon the highest judicial authority, that no case can be cited, nor can any be found, in which a witness has been refused upon the objection, in the abstract, that he was a party to the suit.    On the contrary, express adjudications are to be found in which parties to the record have been admitted as witnesses.    And the only inquiry made in the vast majority of cases, especially those which are modern is, whether the person tendered is interested in the event of the suit?

How stands the point, then, upon principle?    It will be found stated by the elementary writers, as well as in the reported cases, that the rule of exclusion is not founded merely upon interest, but is based, in part at least, upon considerations of policy, to prevent perjury.    And yet, to show the shallowness of this reason, either party may be put to his oath and made a witness in Equity, where he is quite as likely to commit perjury as in a Court of Law.

Parties and persons interested, are everywhere held competent to prove the loss of a written instrument, or that it is in the power of the other party and notice to him to produce it on the trial, or other circumstances necessary to authorize the introduction of secondary evidence of its contents.    Also, to prove the death of a subscribing witness or other facts, in order to the admission of his handwriting; and all other preliminary facts in the case.    Are such persons less exposed to perjury than one who will not be gainer or loser in the event of the suit, and has no possible interest in it, simply because his name is to the record?

In view, therefore, of our own liberal legislation, which allows a party at Common Law to be examined even against his interest; and of the tendency of the age to let *all* objections to testimony to go to its credit, rather than to its competency, I am of the opinion, that in every case where a party in a remote degree represents his own interest in a suit, the rule of

exclusion ought to be under the law, as it is, strictly adhered to. But if the party to the record be found without any possible interest to gain or jeopardize, by the event of the suit, the rule ought to be relaxed and the party sworn.