THE EAST TENNESSEE & GEORGIA RAILROAD COMPANY, plaintiff in error, vs. ALBERT G. WHITTLE, defendant in error.

If a railroad company hires or charters cars to any one, absolutely, the hirer cannot look to the company for damages in case of injury to his property as *a common carrier.* His remedy for injuries must be on contract of hire, and the implied undertaking of the company, that the hired cars are substantial and will be duly carried to their point of destination, &c., &c.

Case, from Whitfield county. Tried before Judge TRIPPE, at October Term, 1858.

This was an action on the case brought by Albert G. Whittle, against the East Tennessee & Georgia Railroad Company, for the recovery of damages for a lot of hogs belonging to Whittle, which were suffocated and killed in the cars of defendant, in and upon which they were shipped at Cleaveland, Tennessee, to be transported to Dalton, Georgia.

The defence was, that the plaintiff chartered from defendant, the cars in which his hogs were shipped; that said cars were under his control, and he superintended and directed the loading of the same, and the hogs were suffocated by plaintiff's crowding too many into one car, and were thus lost by plaintiff's own want of care, and not by any misconduct, or default on the part of the railroad.

The jury found for the plaintiff five hundred and twenty dollars.

Whereupon, defendant moved for a new trial, upon the following grounds:

1st. Because the verdict is contrary to law and evidence, and strongly and decidedly against the weight of the evidence.

2d. Because the Court erred in charging the jury, that the chartering the cars by the plaintiff, did not give him the control thereof or make him responsible for the consequences of overloading them; that the only effect of his chartering the cars, was to give him a right to have his hogs shipped in them, to the exclusion of others, and the railroad company was just as liable as though there had been no chartering, and the hogs had simply been delivered for shipment, as in ordinary cases of goods; and the control resulting from the chartering, did not in the least lessen the company's liability.

3d. Because the Court erred in charging the jury, that the chartering the cars did not give to plaintiff the right to superintend or control this loading, or make him responsible for

overloading, and for any injury arising, in consequence thereof. That the company was liable for all the consequences of such overloading, and that it was the duty of the road to see to it, that the cars were not overloaded, or too many hogs put in them; and if the plaintiff insisted on putting in too many, it was the duty of the company to prevent him, and also, not to allow him to close the doors too closely. This whole duty and responsibility were upon the company, and not upon the plaintiff.

4th. Because the Court after charging the general rule as requested by defendant's counsel, that if both parties are equally guilty of negligence, or if neither was guilty, then the defendant is not liable, added that this principle did not apply in this case, because plaintiff had no right to control the cars or the loading thereof, but defendant had, and was therefore the only party responsible for the injury.

5th. Because the Court erred in charging the jury, that the contract of chartering did not lessen the liability of the railroad company, and this liability must be determined upon the principles which ordinarily govern the liability of common carriers.

6th. Because the Court erred in deciding upon the effect of the testimony, and in charging the jury, that it was the duty of the company not to close the doors of the cars, but that it ought to have slatted up the doors, whether it was the contract or not, if it was necessary for the safety of the hogs; [defendant's counsel insisting, that what attention was necessary, was a question of fact for the jury, and not for the Court.]

7th. Because the Court refused to charge as requested by defendant's counsel, that if the jury believed from the evidence, that the plaintiff chartered the cars, that it gave him the right to put as many or as few hogs in them as he pleased, (provided he did not exceed in *weight*, what was allowed each car.)

8th. Because the Court refused to charge as requested by defendant's counsel, that the contract of chartering a car,

was a sale of it by defendant to plaintiff for the trip, and that defendant was not liable for any injury plaintiff sustained by overloading or crowding it with hogs, if plaintiff superintend did the loading, or it was done under his direction.

9th. Because the Court erred in refusing to charge as requested by defendant's counsel, that where a party charters a particular car, which he sees, and has a knowledge of its quality, defendant is only liable for negligence in running the car, or for its giving out or other negligence not connected with the loading thereof; that being under the control and direction of plaintiff.

10th. Because the Court erred in refusing to charge, as requested by defendant's counsel, that if the plaintiff superintended the loading, and had the control thereof, and the injury occurred by putting too many hogs in the cars and shutting the doors too closely, then defendant was not liable.

11th. Because the Court refused to charge, as requested by counsel for defendant, that if the jury believed that plaintiff was notified by an officer of the road, that he was putting too many hogs in, and that, in disregard of such notice, he put in too many, and thereby caused the injury, defendant is not liable.

12th. Because the Court erred in rejecting the testimony offered for the purpose of showing what was meant by a contract of *chartering a car*, the Court holding that it would determine the rights and liabilities of the parties under the contract as proved.

13th. Because the Court erred in charging the jury, that the measure of the damages in this case was the value of the hogs, at the time and place, when and where shipped, together with the loss occasioned by reason of plaintiff's detention and expense incurred on account thereof.

14th. Because the Court erred in charging the jury, that although the plaintiff chartered box cars, and saw them before he chartered them, and knew their character, still it was

the duty of the railroad company so to have prepared them, as to ship the hogs safely, and if plaintiff was about to put in too many hogs, it was the duty of defendant to prevent it, and either to have refused to carry the hogs, or compelled him to charter another car.

The Court, after agreement, refused the motion for a new trial, and counsel for defendant excepted.

D. A. WALKER, for plaintiff in error.

C. D. McCUTCHIN, *contra.*

*By the Court.*—McDONALD J. delivering the opinion.

The plaintiff in error was sued as a common carrier in the Court below, and the proof established the fact, that the defendant in error chartered of the said plaintiff, two box cars for the transportation of hogs from Cleaveland, in Tennessee, to Dalton, in Georgia.   The hogs were put on board the cars at Cleaveland, were shut up, and many of them suffocated on that night, before the train of cars was put in motion on its trip.

The principal question arising upon the pleadings and evidence, and the rulings and decisions in this case, is whether the plaintiff in error is liable for damages as a common carrier.

A railroad company, from the nature of its occupation is a common carrier, unless there is something in its charter to relieve it from the heavy responsibilities of that character. It is conceded that there is nothing in the charter of the plaintiff in error to restrict or limit its liability in that respect.   But because it is a common carrier, and has an exclusive right of transportation of passengers and freights over its road, in its own cars, and by means of its own motive power, does that deprive it of the right to charter or hire an entire train, or any part of it, to another company or an individual ?   If

540        SUPREME COURT OF GEORGIA.

East Tenn. & Ga. R. R. Co. vs. Whittle.

it does not, and it charters the whole, or a part of its train, so as to give up the possession of the part chartered to the charterer, is the company liable, *as a common carrier*, for damage or injury to property put into the chartered cars?

A ship may be chartered in whole or in part to another. *Story's Ed. of Abbot on Shipping*, 210, *top page*. Whether the owner or charterer is liable as a carrier for the damage, depends on the terms and construction of the charter party, &c. That depends entirely on, whether the owner of the vessel or the charterer has possession of the merchandise or commodity to be transported. There must be a trust and confidence in the owner, manifested by the delivery into his possession of the article to be transported, before he can be charged as a common carrier. In the case of the *East India Company vs. Pullen*, where the defendant was sued as a common lighterman on the Thames, it was the usage of the company to place an officer, called a guardian, in the lighter; the Court held, that "it altered it from the common case, there being no trust in the defendant, and the goods were not to be considered as ever having been in his possession, but in the possession of the company's servant, who had *hired* the lighter to use himself." 1 *Strange's Rep.*, 690. In most of the cases which have arisen under charter parties in England, the principal question arising under the construction of the contract has been, " whether there was an entire letting or parting with the ship for given purposes, so that, during that time the owner had no efficient control, but the charterer had the full disposition of the ship." *Paah J.*, in the case of *Christie vs. Lewis*, 6 *Com. L. Rep.*, 186. If there was an entire letting or parting with the ship, the charterer became the owner for the time, and the ship was delivered to him, and not the freight to the owner. If the ship is chartered or hired in a manner, that the charterer shall retain the possession of his own merchandise or articles for transportion, the owner of the ship can have no lien thereon for the freight or the payment of the sum stipulated for the use of the ship, for there can be

East Tenn. & Ga. R. R. Co. vs. Whittle.

no lien where there is no possession.  When the owner of the ship has neither the possesson of the articles to be transported, nor a lien for freight, as to them, he cannot be a common carrier.  But it is said, there is a difference between the chartering or hiring of a ship, and of a railroad car; that the charterer of a ship may sail where he pleases on the seas, and there are no exclusive rights and privileges to limit his power or control his movements, but in respect to the charterer or hirer of a railroad car, it is not so.  Grant it, that there is a difference; that does not restrict the right of the parties to make a contract, and if it be a contract which violates no principle or policy of the law, it will surely bind the parties to it; and if the parties make a contract, and it be in relation to a new condition of things, it must be construed by known and established principles, applied to such new state of things.  A railroad train is made up of separate cars, cars capable of being let or hired separately, but all are necessarily obliged to pass over the same route, and to be drawn by the same power.  The power which moves it from place to place is owned by the proprietors of the road, unless the whole train with the power and employees be let, and then the ownership is temporarily changed.  If the whole train, including motive power, or a part of a train be *absolutely* chartered or hired to another for a particular trip, or from one place to another, without further stipulation expressed, and the possession is delivered, that other becomes the owner for the time, and has the right to control the freighting and loading of the chartered or hired cars.  There is always and must be in such contracts, certain implied undertakings by both parties; on the part of the hirer, that he will not overload the car, or freight it in a manner to injure it, &c; on the part of the owners, that the car is in good condition, and substantial; that it will be carried safely, and in the usual time, to the point of its destination; that, if laden with stock, time and opportunity will be afforded to give them proper attention, &c., &c.  For a breach of any of these implied engage-

ments, the injured party would undoubtedly have a remedy to recover damages from the other for the injury sustained. *Hamlock vs. Giddes*, 10*th East. Rep.*, 555.

But it is insisted in this case that the possession of the hogs was delivered to the plaintiffs in error, because they retained the management of the train, that their employees controlled it, and that they are liable as common carriers. What we have already said, might perhaps, be sufficient to this point, but we will refer to the dissenting opinion of *Dallas C. J.*, in the case of *Christie vs. Lewis* already cited, and to the authorities there referred to, in support of the proposition that " a ship may be let with a stipulation, that she may continue to be navigated in all respects as before, and the services of the master, and the crew may be let together with the ship ;" 6*th Com. L. Rep.*, 184. There is nothing in the decision to controvert this proposition. If it may be done in the case of a ship, it may be done in the case of the railroad car.

One of the witnesses in this case testified, that the defendant in error chartered the cars, another, that he hired them without further agreement, except that the agent of whom he hired them promised or agreed to have the doors slatted, so as to admit the free circulation of air as far as it was practicable in a boxcar. The defendant superintended the loading of the cars, and determined to have all his hogs put in two cars, which he had been cautioned against as dangerous. The agent of the road did not control him, or attempt to control him in that, and he had the perfect right to do it if he had hired the car. But it is said that the car doors were not slatted agreeable to the agent's undertaking. That is true, and if the damage to the hogs was attributable to that omission, the plaintiff in error is liable to damages for a breach of that contract. It was urged that the defendant in error was present and witnessed the manner in which the hogs were put in, and the cars secured, and acquiesced. There is no evidence that the agent was ever released from his undertaking.

It is in evidence that all the agents of the road were aware that the hogs were in danger of suffocation in such close confinement, and it was certainly the duty of the agent, under his agreement, to slat the doors before the heat and suffocation of the hogs. There is no evidence that the defendant in error had waived it, or that his consent to securing the doors, in the manner they were closed, was any thing more than an expedient to prevent the escape of the hogs, until the slatting would be done.

The defendant in the Court below read as evidence to the jury, parts of the freight list, for what object is not very apparent, if there was an express contract for the hire or charter of the cars independent of the statements in the freight list, restricting the company's liability for the transportion of stock, &c., and fixing the price of freight by the car load. If it was offered as evidence of the contract, and there was no contract of charter or hire, other than what was to be inferred from the notice and the delivery of the hogs on the cars, I am of opinion, that such a notice does not make a contract.

In delivering the opinion of the Court in the case of the *Central Railroad and Banking Company, vs. Hines, Perkins & Co.,* 19 *Ga.*, 210, speaking of the doctrine of notice and special acceptance by a common carrier, I remarked, that " a party to a contract cannot of his own will, change the law of that contract, nor can a man by giving notice abrogate the law or change a rule of law, which attaches to the business, in which he is engaged, a peculiar liability. But we are not to be understood to say, that he may not make a contract, when he makes it on equal terms with those with whom he deals, to mitigate the hardships of a legal rule, which exposes him to apparently unreasonable liabilities, when that contract is not forbidden by any principle of the statute or common law." If there was evidence submitted to the jury to prove both propositions, viz: 1st. that there was an express contract of charter or hire of the two cars on which the hogs were put, by the terms or construction of which the plain-

East Tenn. & Ga. R. R. Co. vs. Whittle.

tiff, in error divested themselves of the liabilities incident to the business of a common carrier; and 2d. that if there was no such express contract, yet the plaintiff in error had restricted their liability in that respect, in their published bills of freight, by which they insisted, the defendant in error was bound, the Court ought to have charged the jury and submitted to them the law in both aspects of the case.

The presiding judge did present his view of the law on the first of the above points to the jury very fully, but from what we have said, it will be seen that in our judgment he committed error in his said charges as it is represented in the second, third, fourth, fifth, sixth and fourteenth grounds taken in the motion for a new trial. We think also, that the requests made of the Court below in writing, to charge the jury as set forth in the seventh, eighth and eleventh grounds, in the motion for a new trial, ought to have been given. It must be understood that we speak of such an unqualified chartering or hiring as the evidence in this case, in one aspect of it, presents; for the charge, and the requests to charge, must be understood in reference to the proof in the case. It will be understood, that if there was no contract of charter or hire other than what is to be inferred from the published rates and rules of transportation as given in evidence by the plaintiff in error, then the plaintiff in error is liable as a common carrier; but we must construe the charge and the requests to charge by the proofs as exhibited in the record, and two or three of the witnesses prove that there was a chartering or hiring of the cars.

Judgment reversed.