# Central Railroad & Banking Co. v. Smitha & Chastain.

*Action against Railroad Company, as Common Carrier, for Damages to Horses transported as Freight.*

1. *Liability of railway company, as common carrier, for injuries to live-stock transported.*—In the transportation of live-stock, a railroad company, as a common carrier, is not an insurer of the animals against injuries arising from their own nature and propensities, and which could not be prevented by foresight, vigilance and care; and its ordinary liability may be limited by special stipulations, so far as they are fair and reasonable, and not contrary to public policy.

2. *Same; special contract limiting liability.*—A special contract by which, in consideration of reduced rates and a free passage for himself, a shipper of live-stock assumes (releasing the railroad company from) all injury, loss or damage the animals may sustain from injuries to themselves or to each other, or from heat, suffocation, overloading, fright, viciousness, and from "any damages, incidental to railroad transportation, which shall not have been caused by the fraud or gross

negligence of said railroad," is reasonable and valid, except in the attempt to limit the liability of the railroad to gross negligence.

3. *Same; stipulation requiring shipper to feed and attend stock.*—A stipulation in a special contract for the transportation of live-stock, by which the shipper agrees "to load. unload and transfer said stock at his own risk, with the assistance of the railroad agents, and in case of accidents, or delays from any cause whatever, to feed, water and take care of the stock at his own expense," being furnished all proper facilities by the railroad, contemplates that he shall himself accompany the stock the entire route, and perform the stipulated services; and the fact that, at one of the stations on the route, on presentation of his bill of lading, the agent in charge gave him a ticket which enabled him to travel on a passenger train, though he might have travelled on the train with his stock, does not show a waiver of these stipulations, nor relieve him of the performance of the specified services.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by Smitha & Chastain, suing as partners, against the appellant, a Georgia railroad corporation, to recover damages for injuries to a car-load of horses, transported over defendant's road from Atlanta, by way of Macon, to Eufaula; and was commenced on the 13th April, 1887. The horses, about eighteen in number, were bought by plaintiffs in Cincinnati, and transported by railroad to Chattanooga; and they were there delivered to the Western & Atlantic Railroad Company, consigned to Wm. Smitha, one of the plaintiffs, at Eufaula, Alabama. The bill of lading, which was dated March 21st, 1887, was signed by said Smitha in his own name; and it bound the railroad company to deliver the horses to the consignee, or his order, at Atlanta, "or, if to be forwarded beyond said station, to such company or carrier whose line may be considered a part of the route, to the destination of said stock." The bill of lading contained, also, special stipulations limiting the liability of the railroad company, which are copied in the opinion of the court. The horses arrived in Atlanta without injury, and were there delivered to the defendant, as a connecting line, for shipment to Eufaula, *via* Macon. Smitha testified, on behalf of the plaintiffs, that he received from the railroad company at Chattanooga a passenger ticket, on which he travelled to Atlanta; that the horses were loaded on the cars by the agents of the railroad company at Chattanooga, and he afterwards saw them in the stock-yard of the railroad company at Atlanta; that he exhibited his bill of lading to the defendant's agent at Atlanta, "who thereupon furnished him with a passenger ticket to Eufaula, *via* Macon, which entitled him to a seat on a passenger train

without additional pay; that nothing was said, either by himself or said agent, about his being expected or required to go on the freight train with his horses, but he had the right to ride on either train; that no new or different contract was made in reference to the further shipment of the horses over defendant's road; that the horses were shipped to Macon, Georgia, by the regular freight train, and he went to Macon on the next passenger train; that he found the horses, on his arrival in Macon, in the railroad stock-yard, and all in good condition; that he directed the keeper of the stock-yard, on the next morning, to ship the horses out on the first train for Eufaula; that the keeper then told him that the first train would lie over at Smithville all night, and be carried to Eufaula; that he then told the keeper he wanted the stock carried directly on to Eufaula, and wanted him (the keeper) to see about it and arrange for a train; that he himself did not see or do anything further about the matter, but left on the passenger train for Eufaula at ten o'clock; that he left no one with the horses, or in charge of them; that he arrived in Eufaula at four o'clock in the afternoon, and the horses arrived at ten o'clock the next morning;" also, that one of them was then severely injured, and died a day or two afterwards, and the others were suffering from pneumonia, quinsy, or some similar disease resulting from cold and exposure, which greatly impaired their value.

On this evidence, the defendant requested the following charges in writing, and duly excepted to their refusal: (2.) "Giving the shipper a ticket at Atlanta, which entitled him to ride on the passenger train, and permitting him to ride on the passenger train, was not a waiver of the condition in the contract, that the shipper was to care for the stock during delays." (3.) "As matter of law, on the evidence in the case, the time during which the car remained at Smithville was not unreasonably long." (4.) "If the disease or ailment from which, as is claimed, the horses suffered, is shown to have been contracted while they were lying at Smithville, and their condition was produced by it, awaiting the train to Eufaula, the defendant is not liable therefor, unless the time the car remained there was unnecessarily (unreasonably?) long " (5.) "If the damage to the horses arose from the want of food and water during the delay at Smithville, the defendant is not liable therefor, if it is shown that the shipper did not feed, water or care for them, nor request the company to do so." (6.) "The undertaking of

the railroad company, in transporting the stock, did not require that it should be done by other than regular trains; and if it is shown that the company forwarded the stock by the first freight train that run to Eufaula, there was no negligence in this respect, although the car containing the horses lay over for twelve hours at Smithville."

ROQUEMORE, WHITE & LONG, for appellant.

A. H. MERRILL, *contra.*

STONE, C. J.—Railroads, as now operated, are relatively a new invention, and transportation upon them of cattle, or live-stock, is a still newer commercial appliance. In the very nature of things more than ordinary risks attend such shipments. The reasons for this increase of hazard or risk will naturally suggest themselves. So great is the liability of live-stock transported in cars, to be injured in the transit, that in some courts it is held that the common-law liability of carriers does not attach to such service. Cooley, the distinguished constitutional lawyer (Torts, 641), says: "The common-law liability of a common carrier does not apply, in all respects, to railroad companies as carriers of live-stock." He is more or less supported in this view by the following adjudged cases, most, or all of them, from courts which rank among the highest: *Smith v. N. H. & N. R. R. Co.*, 12 Allen, 531; *Squire v. N. Y. Cen. R. R. Co.*, 98 Mass. 239; *Penn v. Buf. & E. R. R. Co*, 49 N. Y. 204; *Clarke v. R. & Syr. R. R. Co.*, 14 N. Y. 570; *Farnham v. Cam. & Amboy R. R. Co.*, 55 Penn. St. 53; *Mich. S. & Ind. R. R. Co. v. McDonald*, 21 Mich. 165; *O. & M. R. R. Co. v. Dunbar*, 20 Ill. 623; *E. T., Va. & Ga. R. R. Co. v. Whittle*, 27 Ga. 535; *Kan. Pac. Railway Co. v. Nichols*, 9 Kans. 235.

While we do not consider it necessary to announce any opinion on the general correctness of the proposition stated above, we think we may safely adopt the opinion of the New York Court of Appeals, that, "While common carriers are insurers of inanimate property, against all loss and damage except such as is inevitable, or caused by public enemies, they are not insurers of animals against injuries arising from their nature and propensities, and which could not be prevented by foresight, vigilance and care."—*Penn. v. B. & E. R. R. Co.*, 49 N. Y. 204; *Clarke v. R. & S. R. R. Co.*, 14 N. Y. 570; *Mich. S. & Ind. R. R. Co. v. McDonald,*

[Central R. R. & Banking Co. v. Smitha & Chastain.]

21 Mich. 165; *E. T., Va. & Ga. R. R. Co. v. Johnson,* 65 Ala. 596.

It is settled in this State, and is generally, if not universally, conceded that, within certain limits, common carriers may by contract limit the extent of their liability. The limits are, that such contracts, to be legal, must be fair and reasonable, and that carriers can not contract for immunity against the consequences of their own negligence.—*Steele v. Townsend,* 37 Ala. 247.

By the terms of the contract of affreightment in this case, the shippers obtained reduced rates for the transportation of their live-stock, and also a passenger ticket for Smitha, one of the shippers and consignees. The contract was signed by both parties. The following are extracts from it: "In consideration of said railroad agreeing to transport the above described live-stock at the reduced rate of seventy dollars per car-load, and a free passage to the owner or his agent on the train with the stock, the said owner and shipper do hereby assume (and release the said railroad company from) all injury, loss and damage, or depreciation which the animals (or either of them) may suffer by consequence of either of them being weak, or escaping, or by injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or of being injured by fire, or the burning of any material while in the possession of the railroad; and from any other damages incidental to railroad transportation, which shall not have been caused by the fraud or gross negligence of said railroad. And it is further agreed, that said owner or shipper is to load, transfer and unload the said stock (with the assistance of the railroad's agent or agents), at his or their own risk. And it is further agreed that, in case of accidents, or delays in time from any cause whatever, the owner and shipper is to feed, water and take proper [care] of the stock at his own expense. And it is further agreed, that the railroad employees shall furnish the owner, or person in charge of the stock, all proper facilities on trains, and at stations, for taking care of the same."

It needs no argument to prove that the parties, in making this contract, had it in contemplation, and so agreed, that the shipper or his agent would travel the entire route on the same train with his stock. The duties he undertook himself to perform, and from the performance of which he released the railroad, need not be repeated. They are expressed in the contract, copied above,

[Central R. R. & Banking Co. v. Smitha & Chastain.]

It is contended for the appellees, that the railroad, by furnishing to the shipper a passenger ticket at Atlanta, Georgia, changed the terms of the contract of affreightment, and remitted it to that of the general liability of common carriers; in other words, that the railroad thereby released the shippers from all duties and releases expressed in the written contract. We can not agree to this. We find no evidence of any intention to change or modify the contract first made. This case must stand or fall on the contract as expressed in the writing. And there is no injustice in this. The shippers secured reduced rates, in consideration of certain duties they undertook to perform, and certain releases they bound themselves to make. They secured the benefits, and must bear the burden.

In *South & North Railroad Co. v. Henlein*, 52 Ala. 606, a contract of affreightment was interpreted, which was not materially different from the present one. It was held to be reasonable and valid, in every respect save one. In that case, as in this, there was an attempt to secure the railroad's exemption from all liability for damages, save those which might result from its fraud or *gross* negligence. We held that it was against public policy, and therefore illegal, to stipulate for immunity from the injurious effects of the railroad's negligence, even though it might not be gross. We adhere to that opinion, and hold that the contract signed in this case is legal and valid, in every respect pertinent to this case, save the one we have been commenting on.—*S. & N. R. R. Co. v. Henlein*, 56 Ala. 368; *Farnham v. Cam. & Amboy R. R. Co.*, 55 Penn. St. 53; *O. & M. R. R. Co. v. Dunbar*, 20 Ill. 623; *E. T., Va. & Ga. R. R. Co. v. Whittle*, 27 Ga. 535; *Ala. Gr. So. R. R. Co. v. Thomas*, 83 Ala. 343; *Squire v. N. Y. Cen. R. R. Co.*, 98 Mass. 239.

It was the duty of Smitha, the shipper in this case, to accompany the car in which his horses were being transported, and to perform the services his contract required of him. That duty was rendered all the more pressing, when he was informed in Macon that, by the road's schedule and connections, the cars containing his horses would be side-tracked at Smithville, and remain there through the night. Any damage the stock suffered in the transit, by reason of the failure to receive the care and attention the shipper bound himself to bestow through the entire route, was his fault, and he must bear the loss.

Charges 2, 4, 5 and 6, asked by defendant, should each

[Angel v. Simpson.]

have been given, and the Circuit Court erred in not giving them.

Reversed and remanded.