# Louisville & Nashville Railroad Company *v.* Grant & Richardson.

| 99 | 325 |
| 102 | 413 |

*Action for Damages against Railroad Company, for Injuries to Horses in Transportation.*

1. *Liability of railroad company under special contract for transportation of live-stock.*—A railroad company, receiving live-stock for transportation, may by special contract limit its liability for damages to injuries arising from its own or its servants' negligence, but not to injuries resulting from their willful negligence; and if the special contract contains the latter stipulation, is nevertheless bound to exercise reasonable and proper care and foresight to avoid injury.

2. *Burden of proof as to cause or time of injuries; general charge on evidence.*—When the action is against the railroad company which, receiving the stock from the original company, delivered them at their destination, and counts on injuries resulting from the negligence of the defendant's servants, the *onus* is on the plaintiff to prove that the animals were in good condition when received by it; but, if the evidence is conflicting as to their condition at that time, the defendant is not entitled to the general affirmative charge.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN P. HUBBARD.

(Statement of facts by HARALSON, J.)

"The plaintiffs below, Grant and Richardson, sued the L. & N. Railroad Company for damages, 'for the failure of de-

fendant to convey safely and securely, and to deliver safely and without injury, 27 horses, the property of plaintiffs, and which were received by defendant as a common carrier, to be delivered by the defendant to plaintiffs, at the city of Montgomery, in the State of Alabama, for a reward;' and the further averments are, 'that the defendant failed to convey safely and securely, and to deliver safely and without injury, the same to plaintiffs, at the place aforesaid, as it was the duty of defendant to have done. And plaintiffs aver that said stock was shipped by plaintiffs from Oswego, in the State of Kansas, to Montgomery, in the State of Alabama; that all of said stock, while in possession of defendant, as such common carrier, were injured and damaged, and became sick, sore and faint from deprivation of food, rest and water, and from long confinement, without rest, in a close car, and that when said stock reached the city of Montgomery, Ala., on the 26th day of December, 1889, they were in a bad condition;' and then the complaint proceeds to describe their condition in detail; one was thrown down in the car, and trampled on and hurt inwardly; one was strained in the stifle joint; one was injured across his back, from being thrown down and trampled upon by other animals; and that the load of stock was damaged, bruised, injured and disfigured. Then follow these further averments: 'And plaintiffs aver, that said horses, at the time they were received by defendant as aforesaid, as a common carrier, to be safely conveyed over its line of railroad, and to be delivered to plaintiffs, in the city of Montgomery, Alabama, as aforesaid, for a certain reward to the defendant in that behalf, were of the value, at least, of five thousand dollars; yet, the defendant, not regarding its duty as such common carrier, did not convey such stock, or horses, to the said city of Montgomery, Alabama, as aforesaid, and did not safely and without injury deliver the same to the plaintiffs at said city of Montgomery; but, on the contrary, the said defendant, being such common carrier, as aforesaid, did by its carelessness, negligence and default in the premises, injure the said stock above particularly mentioned and described, to the damage and injury of plaintiffs, to the amount of $3,000. The defendant took issue on the complaint, and on the trial, a verdict was rendered for plaintiffs, for $600.

"On the trial, J. D. Richardson, one of the plaintiffs, testified, that his partner, Mr. Grant, shipped the stock to witness from Oswego, Kansas, consigned to him at Montgomery, and sent him the contract, or bill of lading, which he identified and offered in evidence. Its material parts are, that

special rates are given, upon conditions that its rules of shipment as specified in its contract of affreightment, or bill of lading, are to be accepted and complied with; and in consideration of the acceptance by the shippers of these conditions, the St. Louis & San Francisco Railway Co. agreed to transport for the party of second part (the plaintiffs) one car of horses to Nicholas Station, at the rate of — dollars per car-load, the same being a special rate, lower than the regular rates mentioned in their tariff, in consideration of which, the parties of the second part (plaintiffs) released the party of the first part (said St. Louis & San Francisco Railway Co.) from the liability of a common carrier in the transportation of said stock, and agreed that such liability should be only that of a private carrier for hire, and from any liability for any delay in shipping said stock after the delivery thereof to the agent of said railway company. The shippers accepted for transportation the car provided by the railway company, used for the shipment of stock, and assumed 'all risk of injury which the animals, or either of them, might receive, in consequence of any of them being wild, unruly or weak, or maiming each other or themselves, or in consequence of heat, or suffocation, or other ill effects from being crowded in the car, or of being injured by the burning of hay, straw, or other material used by the owner for feeding the stock or otherwise, and all risk or damage which might be sustained by reason of any delay in such transportation; . . or loss or damage from any other cause or thing, not resulting from the willful negligence of the agent of the railway company.' The contract concludes: 'And it is further stipulated and agreed between the parties hereto, that in case the live-stock mentioned herein is to be transported over the road or roads of any other railroad company, the said party of the first part shall be released from liability of every kind after said live-stock shall have left its road, and the party of the second part hereby so expressly stipulates and agrees; the understanding of both parties hereto being, that the party of the first part shall not be held or deemed liable for anything beyond the line of the St. Louis & San Francisco Railway Company, except to protect the through rate of freight named herein.'

"The witness testified that Nicholas, referred to in the bill of lading, is Nicholas Junction on the Kansas City & Memphis railroad; that from Oswego to Montgomery, the time was about four and a half or five days, and the distance 700 miles; that he had no one in attendance on said stock

[Louisville & Nashville Railroad Co. v. Grant & Richardson.]

on the journey; that the bill of lading which was signed by his partner, Grant, was the only contract he took, or was taken by his partner, for the shipment of this stock.

"The evidence tends to show that the car containing the stock left Oswego in the afternoon of the 21st, arrived at Birmingham at 11:45 A. M. the 25th of December, and left the same day at 3:30 P. M., arriving at Montgomery, and car placed in stock yard at that place at 11:15, and shippers notified at 12 M. of the 26th of December; and that the horses were in a damaged condition very much as described in the complaint.

"S. S. Brown, for plaintiff, testified, that he was a clerk in the office of the Kansas City, Memphis & Birmingham R. R. Co., at Birmingham, which has a connection with the St. Louis & San Francisco Railway Co., and also with the defendant company.; that the stock in question arrived at Birmingham, and was delivered to the defendant company at 11:45 A. M., Dec. 25th; that the stock was free from bruises, and in good condition, and was so receipted for by the defendant company, at the time the stock was delivered to it, by the K. C., M. & B. R. R. Co.     On the cross examination he testified, that the car was in the yard of the K. C. M. & B. Co; that they were not unloaded, or taken out of the cars; that he saw them first in the train, and did not go into the car; that he looked for injuries, and could have told whether there were any swollen or bruised hocks; that the car was placed on the defendant's track, and it was the custom of railroads to receipt for any freight 'in good order and condition,' and if any thing was found wrong, to notify the road from which they got it; that he could not testify that the horses were not bruised at all, but they were not scratched up, or scarred, in any way; that he looked for scars, and it was his business to do so; that he made a personal and close examination of this stock, and was positive that the stock was in good order and conditon, and free from bruises, scratches and scars; that they were fed in the car, by means of a trough along the side of the car, and he looked through the cracks and through the door when opened, to feed them ; and he reiterated the statement that the stock was in good condition when delivered to defendant.

"W. T. Calloway, for defendant, testified, that he was the conductor on the defendant's train that brought the car of stock to Montgomery; that his train had no rough handling, and no wreck or run off; that the road between Birmingham and Montgomery was in good condition; that

VOL. XCIX.

there was no one in charge of the stock; that when he received them at Birmingham, all the stock was standing up; that one horse got down on the way, at Jemison, 44 miles from Birmingham, and had his foot in the crack of the car, about two or three feet from the bottom; that he tried to get the horse up, with the aid of a brakeman, but could not delay the train there, and went on to Clanton, 11 miles from Jemison, where he got the animal up; and he further stated that he did not know whether the stock was otherwise injured or not.

"W. T. Kerlin testified for plaintiff, on rebuttal, that he had been connected with the defendant corporation for the last fifteen years, and had been handling live stock all his life, and that a thorough examination of live stock could not be made, or he could not do so, without unloading it."

On this evidence the defendant asked the court to give the general charge in its favor; and the refusal of this charge, to which an exception was reserved, is the only matter assigned as error.

J. M. FALKNER and CHAS. P. JONES, for appellant.

A. A. WILEY, contra.

HARALSON, J.—The proof shows that the St. Louis & San Francisco Railway Company, which received the carload of horses involved in this litigation, has through connection from Oswego, Kansas, to Montgomery, Alabama, connecting with the Kansas City, Memphis & Birmingham Railroad Company at Birmingham, and that road had one with the defendant's road at that point.

The plaintiff introduced and read in evidence, without objection on the part of defendant, a contract of affreightment, made by plaintiffs with the St. Louis & San Francisco Railway Company, to transport this car of stock from Oswego, Kansas, on its way to its destination—Montgomery, Alabama—to Nicholas Junction on the Kansas City & Memphis Railroad, under which contract, as both sides seem to admit by their course of proceeding, said car came from its starting point to its destination at Montgomery; and the proof shows that the defendant receipted the Kansas City, Memphis & Birmingham Railroad Company for said car at Birmingham.   Under that contract, the defendant was relieved from its common law liability as a common carrier.   The liability of the carrier under it is reduced to the lowest point the law allows—freedom from damages not

arising from its own or its servants' negligence. Beyond that measure it could not go, although it vainly attempted to do so, by stipulating that it should not be liable for loss or damage which did not result from the willful negligence of its agents. It was bound, notwithstanding such a stipulation, to exercise reasonable and proper care and foresight to avoid loss and injury to the property it transported.— *South & North Ala. R. R. Co. v. Henlein*, 52 Ala. 606; *Cen. R. R. & B. Co. v. Smitha*, 85 Ala. 47; *Western Railway Co. v. Harwell*, 91 Ala. 340.

Restricted to the liabilities in this contract—limited by construction within legal bounds—the plaintiffs commenced this action, and claim under it for all that it allows. Under the complaint filed, however, it plays no part in the trial, further than to prescribe the degree of negligence to which the defendant may be held. It will be observed that, as the complaint in the cause is framed, the action is not predicated upon the absolute liability of the defendant as an insurer of the safe delivery of the stock, but proceeds upon the alleged negligence of the defendant in the transportation of the horses. Negligence is the *gravamen* of the action. The averment is, "that the defendant did, by its carelessness, negligence and default in the premises, injure the said stock." Under such averments, the burden was on the plaintiffs to show that the injury occurred after the animals came into the possession of the defendant.— *Western R. R. Co. v. Harwell*, 91 Ala. 340; 11 So. Rep. 781.

The proof tended to show that the horses were received at Birmingham, and there delivered in good condition, to the defendant. If the evidence of the plaintiffs' witness, W. W. Brown, is to be believed, that fact would reasonably appear in the case. Besides, the defendant receipted for them, as being in "good order and condition." If they were in good order and condition when delivered to defendant at Birmingham, and were in very bad order and condition when they arrived at Montgomery, one of two conclusions is unquestionably true—either the evidence tending to show their good condition at Birmingham is a mistake, or, else, they were injured on the journey from that place to Montgomery. When the plaintiffs, assuming the burden, as they did by the terms of the complaint, made such a state of proof as we have, as to the condition in which the animals were delivered to the defendant, they made out a *prima facie* case against the defendant, on which they might have recovered, unless it, in turn, overcame that proof, and showed that the injury complained of was not done after,

[Danforth & Armstrong v. Tennessee & Coosa River Railroad Co.]

but before it received the animals, and when they were in the custody of another company. To do this, it introduced as a witness the conductor who brought the car containing the stock with his train from Birmingham. He swears to a state of facts, making it not easy for one to see how damage could have occurred on the route. There is difficulty in arriving at a conclusion, how it was. The evidence is conflicting, and very strong on each side. Surely, then, it was a case for the jury, and not for the court, rendering it improper for the general charge, asked by the defendant, to have been given.

Affirmed.