[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 572 
The fact that the plaintiff was allowed a passage for himself on the train in which his horses were carried did not prove conclusively, if at all, that he was to attend to their safety during the journey. It may very well be that he desired to be present at the time and place of delivery in order to take care of them there, and that the *Page 573 
privilege of taking passage in the same train was allowed him for that purpose. The charge which permitted the jury to find an agreement which would relieve the defendants from the obligation to keep an oversight of the animals was as favorable to them as they could require.
As to the carrier's liability respecting the transportation of this sort of property, several theories have been suggested on the argument and in our consultations upon this case.
The plaintiffs contend for the rule that the carrier is bound to transport in safety and deliver at all events, save only the known cases in which a carrier of ordinary chattels is excused, while the defendants maintain that they are not insurers at all against the class of accidents which arise from the vitality of the freight. We are of opinion that neither of these positions is well taken. A bale of goods or other inanimate chattel may be so stowed as that absolute safety may be attained, except in transportation by water, where the carrier usually excepts the perils of the navigation, and except in cases of inevitable accident. The rule, established from motives of policy, which charges the carrier in almost all cases, is not therefore unreasonable in its application to such property. But the carrier of animals, by a mode of conveyance opposed to their habits and instincts, has no such means of securing absolute safety. They may die of fright, or by refusing to eat, or they may, notwithstanding every precaution, destroy themselves in attempting to break away from the fastenings by which they are secured in the vehicle used to transport them, or they may kill each other. In such cases, supposing all proper care and foresight to have been exercised by the carrier, it would be unreasonable in a high degree to charge him with the loss. The reasons stated by Chief Justice Marshall, in pronouncing the judgment of the supreme court of the United States, in Boyce v.Anderson (2 Peters, 150), have considerable application to this case. It was there held that the carrier of slaves was not an insurer of their safety, but was liable only for ordinary neglect; and *Page 574 
this was put mainly upon the ground that he could not have the same absolute control over them that he has over inanimate matter. Where, however, the cause of the damage for which recompense is sought is unconnected with the conduct or propensities of the animal undertaken to be carried, the ordinary responsibilities of the carrier should attach. Palmer v. TheGrand Junction Railway Company (4 Mess. Wels., 749) was the case of an action against a railway company for negligence in carrying horses, by which one was killed and others injured; but the damage was occasioned by the carriages running off the track of the road down an embankment, and the case did not turn at all on the peculiarity of the freight, but mainly on the question whether the defendants had limited their responsibility by a notice. The jury found that notice had not been given and that the defendants had been guilty of gross negligence. Mr. Baron Parke, in giving the opinion of the court, declared that the common law duty of carriers was cast upon the defendants. The precise question now before us was not discussed, but it was assumed that the law of carriers applied to the case. There is no reason why it should not, in all cases of accident unconnected with the conduct of the animals. But the rule which would exempt the carrier altogether from accidents arising out of the peculiar character of the freight, irrespective of the question of negligence, would be equally unreasonable. It would relieve the carrier altogether from those necessary precautions which any person becoming the bailee, for hire, of animals is bound to exercise, and the owner, where he did not himself assume the duty of seeing to them, would be wholly at the mercy of the carrier. The nature of the case does not call for any such relaxation of the rule, and, considering the law of carriers to be established upon considerations of sound policy, we would not depart from it, except where the reason upon which it is based wholly fails, and then no further than the cause for the exception requires. *Page 575 
We cannot, therefore, assent to the position of the counsel for either of the parties in this case. The learned judge who tried this case gave to the jury the true principle of liability in such cases. Laying out of view the idea of inevitable accident, which it was not pretended had occurred, he instructed them that the defendants were responsible, unless the damage was caused by an occurrence incident to the carriage of animals in a railroad car, and which the defendants could not, by the exercise of diligence and care, have prevented. This accords with our understanding of the law.
There was sufficient evidence of negligence to be submitted to the jury. Besides what was said by the witnesses as to the size of the car, it was quite probable that if a proper watch had been kept the horse would have been saved from strangulation. It was for the jury to say whether prudence did not require that a servant of the defendants should have been stationed in or about the horse-car, so as to observe the conduct and condition of the animals constantly or at short intervals.
We think no error was committed on the trial to the prejudice of the defendants, and that the judgment should be affirmed.
Judgment accordingly.