DAVID PENN, Jr., Respondent, *v.* THE BUFFALO & ERIE RAILROAD COMPANY, Appellant.

A common carrier of animals is not an insurer against injuries resulting from their nature and propensities, and which could not be prevented by foresight, diligence and care. Where they are transported under a special agreement, the liability of the carrier is to be determined by the agreement. He is only liable for the performance of the duty undertaken thereby, or for some wrongful act either willful or negligent.

Defendant received from plaintiff five car-loads of cattle, to be transported from Erie to Buffalo under a written agreement, by the terms of which plaintiff assumed all risks of injuries "from delays, or in consequence of heat, suffocation, or the ill effects of being crowded upon the cars;" the agreement provided that plaintiff should load and unload the cattle at his own risk, the defendant furnishing assistance as required; an agent of the owner was to ride free and to take the care and charge of the stock; the cattle were in charge of such agent. At Dunkirk the train was detained by a snow storm three days. The cattle could have been unloaded by constructing a platform; this, defendant declined to do and they remained in the cars twenty-four hours, in consequence of which, three of the cattle died and others were injured. *Held*, that under the contract the duty of defendant had respect simply to the transportation and not to the care of the cattle while *in transitu;* that the provision for loading and unloading had reference to the terminus of the transportation and not to an intermediate station, and defendant was not required to unload at Dunkirk or furnish facilities for so doing; that the injury was attributable to the negligence of plaintiff's agent, and defendant was not liable. (PECKHAM, J. dissenting.)

(Argued March 29, 1872; decided April 16, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below 3 Lans., 443.)

The action was brought to recover damages for injury sustained by plaintiff's cattle while being transported upon defendant's road from Erie, Pa., to Buffalo. The cattle were transported under an agreement, which contained, among other things, the following:

" The said party of the second part (plaintiff) does hereby agree to take, and hereby does assume all and every risk of injuries which the animals or either of them may receive in consequence of any of them being wild, unruly, vicious, weak, escaping, maiming or killing themselves or each other, or from delays, or in consequence of heat, suffocation or the ill effects of being crowded upon the cars of the said railroad companies, or on account of being injured by the burning of hay, straw or any other material used by the owner for feeding the stock or otherwise, and for any damage occasioned thereby, and also all risk of any loss or damage which may be sustained by reason of any delay, or from any other cause or thing in or incident to, or from or in the loading or unloading said stock.

" And it is further agreed that the said party of the second part is to load and unload said stock at his own risk, the said railroad companies furnishing the necessary laborers to assist under the direction and control of said party of the second part, who will examine for himself all the means used in the loading and unloading, to see that they are of sufficient strength and of the right kind, and in good repair and order.

" And the said party of the second part, for the consideration aforesaid, hereby releases and agrees to release and to hold harmless and keep indemnified the said party of the first part of and from all damages, actions, claims and suits on account of any and every the injuries, loss and damage hereinbefore referred to, if any such occurs or happens."

Under said contract plaintiff delivered five car loads of cattle. The cattle reached Dunkirk in a severe snow storm, which continued three days. Trains could not be moved with safety. Defendant's place for unloading cattle was occupied by another train. Soon after the stoppage the agent

of plaintiff, in charge of the stock, requested defendant to unload the cattle or furnish facilities for so doing.

The cattle could have been unloaded where the, train stopped, by constructing a temporary platform. The cattle were detained in the cars until the next day after their arrival, and, when taken out, three were dead and others injured.

The court instructed the jury that the contract exempted the defendant from liability to pay for any damages arising from the delay in transporting the cattle, and from their detention at Dunkirk; that the defendant was, however, liable for the damages sustained by the cattle while detained at Dunkirk, provided they found from the evidence that the defendant was requested by the agent of the plaintiff to unload the cattle there, and could have unloaded them by the exercise of due diligence, in time to have prevented the damages complained of; that, if such request was made, the defendant was thereafter bound to unload the cattle there, provided they could have been unloaded by the exercise of due diligence. To this part of the charge the defendant excepted.

The plaintiff's agent, who had charge of the cattle and was with them at Dunkirk, testified he could have unloaded the cattle there where they stood, but that it was not his business to do it. The defendant's counsel asked the court to instruct the jury that the plaintiff, for that reason, could not recover. The court declined to so instruct the jury, and the defendant's counsel excepted.

The court was requested to instruct the jury that the plaintiff, under such circumstances, could not recover any damages that would have been prevented if he had unloaded the cattle himself. The court refused to so instruct the jury, and the defendant's counsel excepted.

The jury rendered a verdict in favor of the plaintiff for $1,060.

*A. P. Laning* for the appellant. If the plaintiff's own

negligence or omission of duty contributed to the injury he cannot recover. (*Smith* v. *Smith*, 2 Pick., 621; *Brownell* v. *Flagler*, 5 Hill, 282.) The court should have instructed the jury that the plaintiff could not, under such circumstances, recover for any damages that would have been prevented if he had unloaded the cattle himself. (*Loker* v. *Damon*, 17 Pick., 284; *Hamilton* v. *McPherson*, 28 N. Y. R., 72, 76; *Miller* v. *Mariners' Church*, 7 Greenleaf, 51.)

*Benjamin H. Williams* for the respondent. Defendant was chargeable with actual negligence unless it exercised the care and prudence of a prudent man in his own affairs. *Express Co.* v. *Kountze Bro.*, 8 Wallace, 342; *Prop. Niagara* v. *Cordes*, 21 How. [U. S.], 7.) As to whether such care and prudence was exercised by the company was a question of fact for the jury. (*Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566; *Munroe* v. *Leach*, 7 Metcalf, 274; *Baxter* v. *Second Avenue R. R. Co.*, 30 How. Pr., 219; *Aymar* v. *Astor*, 6 Cow., 266; *Ernst* v. *Hudson River R. R. Co.*, 35 N. Y., 9.) The jury having found negligence, defendant cannot claim exemption from liability under the contracts, as the contract does not relieve from negligence or want of care. (*Kountze* v. *Express Co.*, 8 Wal., 342.) The same doctrine has been held in other cases. (*Gillaume et al.* v. *The Hamburgh & American Packet Co.*, 42 N. Y., 212; *Prentice* v. *Decker*, 49 Barb., 21; *Stedman* v. *West. Trans. Co.*, 48 id., 97; *Perkins* v. *N. Y. C. R. R. Co.*, 24 N. Y., 196; *Smith* v. *N. Y. C. R. R. Co.*, 24 id., 230; *Wells* v. *Steam Nav. Co.*, 4 Seld., 375; *Sager* v. *P. S. & B. R.*, 31 Maine, 238.)

ALLEN, J. The liability of a common carrier of animals is essentially different from that of a carrier of merchandise or other inanimate property. While common carriers are insurers of inanimate property against all loss and damage except such as is inevitable or caused by public enemies, they are not insurers of animals against injuries arising from their nature and propensities, and which could not be prevented

by foresight, vigilance and care. ◦ (*Clarke* v. *Rochester and Syracuse R. R. Co.*, 14 N. Y., 570 ; *Michigan S. and N. I. R. R. Co.* v. *McDonough*, 21 Mich., 165 ; Angell on Carriers, § 214 *a*.)  But for the special agreement under which the plaintiff's cattle were transported, there would be but little doubt as to the defendant's liability for the damages caused by the want of proper care while detained at Dunkirk.  Ordinary care and attention to the cattle during the delay would have prevented the injury.  The liability of the defendant is, however, to be determined by the agreement of the parties.  The railroad company, by reason of the written contract, occupied the position of a private carrier for hire, and is only liable for the performance of the duty undertaken according to its terms, or for some wrongful act, either willful or negligent.  The agreement furnishes the extent of liability, unless a loss has occurred from the willfulness or negligence of the carrier.  (*Farnham* v. *Camden and Amboy R. R. Co.*, 55 Penn. St. R., 53 ; *Colton* v. *Cleveland and Pittsburgh R. Co.*, 67 id., 211 ; *New Jersey St. Nav. Co.* v. *Merchants' Bank*, 6 How. U. S. R., 344 ; Angell on Carriers, §§ 225, 226 ; *Dorr* v. *N. J. St. Navigation Co.*, 1 Ker., 485.)

The plaintiff assumed all risks of injuries which the animals might receive " from delays, or in consequence of heat, suffocation or the ill effects of being crowded upon the cars," and also all risk of loss or damage in loading and unloading ; and the agreement provided that the plaintiff should load and unload the stock at his own risk, the defendant furnishing assistance as required.  By another clause in the agreement, an agent of the owner was to ride free, and to be with the train to take the care and charge of the stock, and D. W. Barron is named as passed free in charge of the stock.  The case states that it was proved on the trial " that the said cattle were in the charge of D. W. Barron as the agent of the plaintiff, and he accompanied them on the cars from Kentucky to Buffalo."

The provision in the contract for loading and unloading the cattle had respect to the terminus of the transportation, and

not for loading and unloading at any intermediate station. There is no claim that the detention at Dunkirk was occasioned by the willful or negligent conduct of the defendant or its servants, or that the cattle were not carried to their destination as soon as they could have been, with reasonable diligence. The loss resulted from the delay, and in consequence of "heat and suffocation and being crowded upon the cars." The loss was within the terms of the contract and to be sustained and borne by the plaintiff, unless caused by the willful act or neglect of the defendant.

The cattle were in charge and under the care of the plaintiff's servant and agent. No duty was devolved upon the defendant other than to transport them in a proper car, safely and with reasonable dispatch. The carrier did not undertake to look after the cattle or care for them, to water or feed them, or to guard against any of the necessary consequences resulting from delays or detention on the route. Whatever was required to be done to prevent injuries and loss arising from such causes was to be done by the owner or his servant in charge of the cattle. The agent of the plaintiff testified that he could have arranged planks and taken the cattle from the cars, and thus prevented the injury, and did not because it was not his business. Had he undertaken to remove the cattle from the cars and been prevented by the defendant or its servants and agents, and loss had ensued, the defendant would have been liable. The recovery was had upon the ground that it was the duty of the defendant's agents, upon request of the plaintiff's agent, to have unloaded the cattle at Dunkirk, if it could have been done by the exercise of reasonable care and diligence, and the jury were instructed to this effect. This was placing the responsibility of the care of the cattle upon the carrier instead of the owner. If, as the case shows, the cattle were in charge of and under the care of the servant and agent of the owner, the defendant was not chargeable for neglect of duty in not unloading them or taking any other care of them necessary for the prevention of injury or loss. The duty of the defendant had respect to

the transportation of the cattle, and not the care of them while *in transitu.*

Again, this case falls within the general principle that he who seeks to recover damages which have resulted from the negligence of another, must himself be free from negligence contributing to the injury. The plaintiff's agent in charge of the cattle could have prevented all loss by himself removing the cattle, and his omission to do so, under the circumstances, was a negligent omission of duty, directly contributing to the injury. If the agent of the owner had not been with the cattle to take care of them, the duty would have been upon the defendant to do what was necessary to guard against loss and damage during the detention; that is, to use proper diligence and care in looking after the cattle. (*Clark* v. *Rochester and Sy. R. R. Co., supra; Hamilton* v. *McPherson,* 28 N. Y., 72.)

The direct cause of the injury was the want of proper care of the cattle at Dunkirk, and is upon the evidence attributable to the plaintiff's agent. If there was any obstacle interposed by the defendant to the unloading of the cattle, it should have been shown.

The judgment must be reversed and a new trial granted.

CHURCH, Ch. J., FOLGER and RAPALLO, JJ., concur. GROVER, J., concurs in the result, upon the ground that the exception to the refusal of the judge to charge as requested, as to the duty of the person in charge of the stock to unload them, was well taken.

PECKHAM, J., dissents.

Judgment reversed.