(8 Misc. Rep. 22.)

### GIBLIN v. NATIONAL STEAMSHIP CO., Limited.

(Superior Court of New York City, General Term.    April 2, 1894.)

1. CARRIERS—INJURIES TO ANIMALS IN TRANSPORTATION.

 Where a carrier seeks to escape liability for injury to an animal delivered to it for transportation on the ground that the injury arose from the viciousness, unruliness, or restiveness of the animal, it must also be shown that the carrier was not guilty of negligence.

2. SAME—INSTRUCTIONS.

 In an action against a carrier for the loss of a horse after delivery to defendant for transportation, the court properly refused to charge that "the proximate cause of the accident was the unmanageable condition of the horse," as that is a question for the jury.

Appeal from jury term.

Action by Frederick Giblin against the National Steamship Company, Limited, to recover damages for the loss of a horse delivered to defendant for transportation.    From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.    Affirmed.

Argued before SEDGWICK, C. J., and GILDERSLEEVE, J.

John Chetwood, for appellant.

Goodrich, Deady & Goodrich (W. W. Goodrich, of counsel), for respondent.

GILDERSLEEVE, J.    The assignors of the plaintiff purchased 10 horses in Yorkshire, England, and entered into a contract with the defendant—a foreign corporation engaged in the business of transporting passengers and freight between Great Britain and the United States—whereby defendant agreed to carry the horses from

Liverpool, by the steamship Queen, to the city of New York. In loading the horses upon the steamship at Liverpool, one of the horses fell overboard, and was drowned. This action is to recover the value of the horse thus lost, together with £10 which had been paid for freight thereon by the assignors of plaintiff to the defendant. The complaint alleges that "the defendant, or its servants, performed their duties so unskillfully and negligently, and supplied such insufficient machinery and appliances, * * * that one of said horses fell overboard, and was drowned." The defendant, by its answer, substantially admits the contract for transportation set forth in the complaint, and alleges that "it has fulfilled its contract, and that it is under no such liability as is alleged in the complaint." For further answer, defendant says that a horse, while in the charge of the servants of plaintiff's assignors, was drowned. It is thus seen that the issues raised by the pleadings are (1) the proximate cause of the loss of the horse, and the responsibility therefor; and (2) the value of the horse.

The process of shipping consisted in placing the horse into a box or crate with a door at each end. Then the doors were closed, and the box, containing the horse, was hoisted, and swung on board the steamship. The horse in question, called "Gay Lad," was restive and uneasy, and did not readily enter the box. After four other horses had been safely placed on board, in the manner described, the horse Gay Lad still refused to be led into the box, as the other horses were, and was therefore backed into the box, and went through the door at the other end, off the dock, into the water, and was drowned. It was the defendant's contention upon the trial—and there was evidence introduced in support thereof—that the horse was in charge of the servants of plaintiff's assignors when he was drowned. The issue on this question seems to have been fairly and squarely left to the jury. The learned trial judge said to the jury:

"If you find that the horse was in the possession and under the control of Messrs. De Young and Atterbury [the assignors of plaintiff] at the time this accident happened, of course there cannot be any recovery."

On this question the jury, by their verdict, found adversely to the defendant, and there is ample evidence to sustain their conclusion. While it is true that there is a conflict of testimony on this point, we are of the opinion that there is a fair preponderance of evidence in support of the plaintiff's claim that the defendant assumed and undertook the task of loading the horses upon the steamship. It is the defendant's testimony, as well as the plaintiff's, that one Balfe, an employé of the defendant, superintended the loading of the horses, and gave specific instructions in reference to the management of the horse in question, while upon the wharf. When the horses arrived upon the wharf, they were assigned by defendant's servants to a shed, in which to stand until brought to the box for hoisting upon the steamer, under the superintendence of Balfe. The evidence is certainly sufficient to sustain the conclusion that there was a delivery of the horses by plaintiff's assign-

ors to the defendant, and that at the time of the accident they were in the possession and under the control of the defendant. The defendant had received on the day previous payment for the transportation of the horses, at the rate of £10 for each horse. The fact being established that defendant received the horses for transportation to the city of New York, the common-law liability of common carriers of property rested upon the defendant, in respect of the horses, and it became insurer against all loss, subject to the following qualifications: It could be relieved from liability, in case of loss, provided the loss could be attributed to the intrinsic qualities or nature of the animal, and defendant's freedom from contributory negligence could be made to appear, and provided the loss was due to an act of God or of the public enemy. On this question the learned trial judge laid down, for the guidance of the jury, the rule in the following language:

"If this unmanageable condition of the horse was one innate in the animal, —in other words, if he was such an animal as would, from his disposition, be unmanageable, or was, from his very disposition, unmanageable at the time, —there cannot be a recovery here, unless this unmanageable condition was brought about by the carelessness or negligence of the defendant."

We think it may be said that this rule was more favorable to defendant than it had a right to ask, since the controlling authorities hold that, to excuse the carrier from liability, it must not only appear that the injury arose from the viciousness, unruliness, or restiveness of the animal, or similar causes attributable to the nature and propensities of the animal itself, but it must also appear that the carrier has been guilty of no negligence causing the loss. Penn v. Railroad Co., 49 N. Y. 204; Cragin v. Railroad Co., 51 N. Y. 61; Evans v. Railroad Co., 111 Mass. 142.

It was not error to refuse to charge that "the proximate cause of the accident was the unmanageable condition of the horse," inasmuch as that was a question of fact, clearly within the province of the jury to determine.

After careful examination of the entire case, we conclude that there is sufficient evidence to sustain the plaintiff's allegation of defendant's negligence, as set forth in the complaint in the following language, to wit:

"That, in loading said horses upon said steamship, the defendant, or its servants, performed their duties so unskillfully and negligently, and supplied such insufficient machinery and appliances, that * * * said horse fell overboard and was drowned."

There is sufficient testimony to support the conclusion of the jury as to the amount of damages, and we can find no reason for setting aside or modifying the verdict, as being against the evidence, or excessive.

The question of jurisdiction is not in the case. The defendant duly appeared and answered, but did not plead the want of jurisdiction. If that question could have been raised, it must be deemed to have been waived. Code, § 266; Popfinger v. Yutte, 102 N. Y. 38, 6 N. E. 259; McLean v. Railroad Co., 13 Daly, 446.

The rules of law laid down by the court below in the conduct of

the trial, and in the presentation of the case to the jury, were correct. The result of the trial depended upon questions of fact, which were fairly left to the jury to decide, and its verdict is conclusive. The judgment and order appealed from must be affirmed, with costs.