## AMES v. FARGO.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

**1. CARRIERS—COMMENCEMENT OF LIABILITY.**

Ordinarily the liability of a common carrier begins when the goods are delivered to it for transportation, and it assumes dominion over them.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 110.]

**2. SAME—TRANSPORTATION OF ANIMALS—INJURIES—PROXIMATE CAUSE.**

Plaintiff purchased a mare, and arranged with the agent of defendant express company for her transportation. She was delivered and placed in a stall in a car, and tied by an employé of the railroad company, who was acting under the directions of plaintiff's agent. Defendant's employé attempted to tie her, and objected that she was tied too long, but his opinion was overruled by the others. During the trip the mare reared, and got her forefeet or legs over the top of the gate of the stall, and permanently injured herself. *Held*, that the proximate cause of the accident was the slack tie, for which defendant was not liable.

**3. SAME—NEGLIGENCE—FAILURE TO PROVIDE AN ATTENDANT.**

Where an attendant was not reasonably necessary for the safe transportation of a mare, a carrier was not guilty of negligence in failing to provide one.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 925.]

**4. SAME—CONTRACT FOR TRANSPORTATION—FAILURE TO READ.**

Where plaintiff executed a written contract for the transportation of a mare, he was bound by its terms, though he failed to read it.

**5. SAME—LIABILITY FOR NEGLIGENCE.**

A common carrier's contract for the transportation of a mare could not absolve it from liability for injuries to the mare if caused by the negligence of the carrier's servants.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 933–939.]

Appeal from Judgment on Report of Referee.

Action by Alfred H. Ames against James C. Fargo, as president of the American Express Company. From a judgment for plaintiff on report of a referee, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Udelle Bartlett, for appellant.
George N. Burt, for respondent.

SPRING, J. On the 31st day of October, 1900, the plaintiff purchased a valuable mare of one Whaling at Carthage, N. Y. Pursuant to an understanding between them, Whaling kept the mare until November 2d, when he shipped her by express to the plaintiff at Carthage for Oswego, as he was requested to do by the plaintiff. On the day of the purchase the plaintiff arranged with the agent of the defendant at Carthage for a car for the shipment of the mare, executed in duplicate the usual live stock agreement, and paid the shipping charge of $25. The mare when delivered was placed in a stall in the car, constructed of slats, the sides 5 feet and the door 4 feet 6 inches in height, and which was the usual construction for the shipment of horses. The mare was tied by a rope running through the halter ring, and fastened on each side. It was hitched in this way by a man named Myers, an

employé of the railroad company but not of the defendant, and he acted under the direction of Whaling. When the train with this car reached Watertown en route to Oswego, the mare had one fore leg over the top of the door of the stall. When taken down it was discovered that the rope was slack, enabling the mare to rear and jump. She was removed from the car at Oswego, and was lame. The ligaments and tendons on the fore leg which was caught over the door were seriously strained, permanently disabling her, and impairing her value. The plaintiff has sued the defendant, charging negligence.

Ordinarily the liability of a common carrier begins when goods are delivered to it for transportation, and it at once assumes dominion over them. London & Lancashire Fire Ins. Co. v. R. W. & O. R. R. Co., 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752. We think that rule does not apply in the present case. Whaling was the agent or representative of the plaintiff, and was present when the mare was loaded, and dictated the manner in which she should be tied. Beals, an employé of the defendant, attempted to tie her, when Whaling interfered, and directed Myers, who was not in the employ of the defendant, to fasten the rope, which he did. Beals said there was too much slack in the rope, and "that there was nothing to hinder the horse from rearing to the top of the car," but Myers insisted to the contrary.

The referee, in response to the request of the defendant, has found:

"That the rope was hitched by Myers too loosely to prevent said mare from rearing in said stall, and putting her fore feet or legs over the top of said gate or door of said stall.'

And further:

"That if said rope running from said mare's head to the top slat of said crate had been properly hitched—that is, hitched short enough—said mare could not have reared up in said stall, and could not have put her leg over the top of the door or gate of said stall.'

The evidence sustains these findings The proximate cause of the accident was the slack rope, permitting the mare to throw her fore leg over the door, and the plaintiff was responsible for that condition. He could not insist that the mare should be tied in a certain way against the protest of the defendant, and when an injury occurred because of his defective method, charge the defendant with the damages. There is no evidence showing any improper construction of the stall, or that an injury had ever occurred before in the shipment of horses in similar stalls.

The referee has imputed negligence to the defendant in failing to provide an attendant to accompany the horse on the trip. There is nothing in the agreement imposing that obligation on the defendant, and such was not its usual practice. If an attendant were necessary to secure the safe transportation of the mare, it might be the duty of the defendant to provide one, for its obligation as a common carrier was to deliver the mare safely at its destination. But the evidence reasonably shows that an attendant was not essential, and if the mare had been carefully hitched no injury would have been inflicted upon her. It is natural for a horse confined to a stall in a freight car to rear and struggle, and the defendant did not insure against that propensity, only to regulate it by the exercise of diligence and care (Penn

v. Buffalo & Erie R. R. Co., 49 N. Y. 204, 10 Am. Rep. 355; Waldron v. Fargo, 170 N. Y. 130–138, 62 N. E. 1077), and that would have been accomplished except for the interference of the plaintiff.

As already noted, the parties executed an agreement regulating their rights in regard to the transportation of the horse. The plaintiff claims that he did not read the agreement, nor did he fully comprehend its contents. He is, none the less, bound by its terms. Zimmer v. N. Y. C. & H. R. R. Co., 137 N. Y. 460, 33 N. E. 642; Kirkland v. Dinsmore, 62 N. Y. 171, 20 Am. Rep. 475; Penn v. Buffalo & Erie R. R. Co., supra. He is an intelligent man, and cannot avoid the agreement because of his own remissness in not reading it, as there was no deception practiced upon him. But the agreement does not absolve the defendant from exercising care in shipping the horse. If the agent of the defendant had tied the mare, and the injuries had resulted from the improper manner in which she was fastened, so that negligence was imputable to the defendant, it would be liable notwithstanding the agreement.

The pivotal point in the case is the insistence of Whaling that Myers, rather than the representative of the defendant, should hitch the mare; and by that act the defendant was relieved from responsibility for injury arising from the defective tying.

The judgment should be reversed, and a new trial granted, with the costs and disbursements of this appeal to the defendant to abide the event.

Judgment reversed, and a new trial granted, with costs and disbursements of this appeal to the defendant to abide the event. All concur.