HANER et al. v. FARGO.

(Supreme Court, Appellate Division, Third Department.   March 3, 1915.)

1. CARRIERS (§ 218*)—CARRIAGE OF LIVE STOCK—LIABILITY FOR INJURIES—CONFINEMENT WITHOUT FOOD, WATER AND REST.

Under Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 (U. S. Comp. St. 1913, § 8561), forbidding carriers to confine horses beyond 36 hours without unloading, watering, and resting them, unless prevented by accidental causes, where shippers agreed to load, transship, and unload the horses at their own risk, and during the transportation thereof to unload them whenever necessary, and one of the shippers accompanied them to take care of them, the carrier was not liable for injuries caused by confinement for more than 36 hours, whether or not it had any sufficient excuse to offer to the federal authorities, especially where the shipper accompanying the horses never requested or desired that they be unloaded.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

2. CARRIERS (§ 217*)—INJURIES TO LIVE STOCK—LIABILITY—EXEMPTION CONTRACTS.

Under a contract for the transportation of horses, by which the shippers agreed to take care of the horses while on the road, and one of them was carried free for this purpose, where the car was equipped with ventilators and windows, it was the duty of the shipper accompanying the horses to open the ventilators, or cause the carrier to do so, and where he made no effort in that direction the carrier could not be held liable for injuries to the horses from lack of ventilation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 931; Dec. Dig. § 217.*]

3. CARRIERS (§ 228*)—ACTIONS FOR INJURIES TO LIVE STOCK—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a shipment of horses, evidence *held* insufficient to support a jury finding that a delay in transportation of 5 hours beyond the 36 hours provided by the contract caused contagious pneumonia, assuming that such delay was negligent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from Trial Term, Greene County.

Action by Henry Haner and another against James C. Fargo, as president of the American Express Company. From a judgment entered in favor of plaintiffs, and against defendant, for $2,387.50 damages and costs, in the sum of $123.25, and from an order denying a motion to set aside the verdict, and for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Visscher, Whalen & Austin, of Albany (H. Leroy Austin, of Albany, of counsel), for appellant.

Brinnier & Canfield, of Kingston (William D. Brinnier, of Kingston, of counsel), for respondents.

HOWARD, J.   The plaintiffs were horse dealers. They resided at Catskill, N. Y. In February, 1912, they purchased at Chicago 28 horses. They entered into a written contract with the American Express Company, of which the defendant is president, to ship the horses to Catskill. Under said contract the plaintiffs agreed to take care of the horses while they were on the road. One of the plaintiffs accompanied the horses, on free transportation furnished by the defendant, for that purpose. The plaintiffs also in writing requested the express company not to unload the horses in transit. This request was made by authority of section 1 of chapter 3594 of the act of Congress of June 29, 1906; otherwise, it would have been the duty of the express company under the law to unload the horses for feed and rest after 28 hours. In order to feed and water and rest the horses, it would have been necessary to unload them from the car. Not to exceed 36 hours was the length of time, according to the regular train schedule, which the plaintiffs stated, in writing, that they understood the trip would consume. The horses were sent on and arrived at Catskill some hours late—the plaintiffs say 5 hours; the defendant says about 2. The animals were taken by the plaintiffs to their stables, and very soon after they arrived there some of them developed contagious pneumonia. All of them subsequently were afflicted. One horse died in about 40 hours after its arrival. Twenty-two out of the 28 died within 2 weeks.

The complaint alleges that the death of the horses was caused by the negligence of the defendant. Four specifications of negligence are asserted: First, that the defendant failed to furnish the kind of car agreed upon; second, that the horses were delayed on the road an unreasonable length of time beyond the 36 hours; third, that the defendant closed the ventilators of the car, so that the horses were deprived of sufficient air; fourth, that in violation of the federal statute the defendant detained the animals on the road more than 36 hours without affording the plaintiffs an opportunity to unload, feed, water, or rest them, and refusing plaintiffs such opportunity.

[1] The last specification may be considered first. By written agreement the plaintiffs contracted that:

"The shipper agrees to load, transship, and unload said animals at his own risk, and during the transportation thereof to unload and load said animals whenever the same may be necessary or required, at his own risk, and to furnish the necessary laborers therefor, and further agrees to cause the necessary attendants to accompany and take charge of said animals. * * * * "

The federal statute forbade the defendant to confine the horses beyond 36 hours without unloading, feeding, watering, and resting them, unless prevented from so doing by accidental causes. The defendant, very evidently, expected to comply with the law. The regular train schedule time of the railroads over which the defendant was

forced to send the car, and which it did not own and could not control, indicated that the horses would be landed in Catskill within 36 hours. Accidental causes delayed the train somewhat. But even if these accidental delays can be said to have been sufficient to have required that the horses be unloaded and cared for, the plaintiffs had contracted with the defendant to do that themselves. Therefore, even though the defendant may not have a sufficient excuse to offer to the federal authorities, it has relieved itself from liability to the plaintiffs by the written contract. But it is very apparent that this subject is an afterthought of the plaintiffs. The plaintiff Deyo, who accompanied the horses to take care of them, never requested that they be unloaded for rest, etc. He never intimated that he wished it done. Evidently he never thought of it. He did not consider it necessary, or desire it done. It is idle to say that the defendant refused to permit him to do it.

[2] In close connection with the fourth specification comes the third, the allegation concerning the lack of ventilation. Deyo went with the horses to take care of them. He seems to have taken very little care, and to have paid very little attention to the horses. The car was equipped with 40 ventilators, besides windows. If the car needed ventilation, it was Deyo's duty to open the ventilators, or to cause the defendant to do so. He made no effort in that direction. He made no complaint, according to his own testimony, except at Detroit; and then, instead of staying by the horse car and attending to the matter. as was his duty, he went away after a few minutes. The plaintiffs cannot hold the defendant for something which it was their duty to attend to. Penn v. Buffalo & Erie R. R. Co., 49 N. Y. 204, 10 Am. Rep. 355.

The contention that the defendant failed to furnish the kind of car agreed upon the plaintiffs do not seem seriously to urge. But the evidence is overwhelming that the car was one of the very best horse cars owned by the Arms Palace Car Company. It was built in the Pullman shops, and was one of the largest and finest of that type of cars. Clearly no negligence can be predicated on the assertion that the car was not up to contract.

[3] What caused the horses to be sick? There is some evidence that several of the horses had just come out of a hospital, and were infected with the disease before they were put in the car. But the jury seems to have rejected that evidence. The allegation of negligence which the plaintiffs most vigorously urge is the fact that the horses were delayed on the road more than 36 hours and thereby made sick. There is a serious conflict of evidence as to the length of this delay, but the jury has found with the plaintiffs, and therefore, assuming that the horses were kept in the cars 5 hours longer than they should have been kept, the question arises: Did this delay cause the sickness? The defendant cannot be charged, it must be remembered, for the first 36 hours. That was not negligence. The defendant had a right to consume that length of time in transporting the horses. I keeping the horses on the road beyond the 36 hours, were they made sick—sick with contagious pneumonia? If the train had arrived *within* the 36 hours, would the horses have remained well?

The record seems to be barren of evidence which answers these questions. The veterinarians have thrown no light upon these questions. Lack of food and drink and rest for 5 hours might hasten the development of this disease, the doctors say, but not cause it. The expert evidence discloses that the disease from which the horses died is a contagious disease; that is, it is a germ disease, and the germs are transmitted in many ways. The germ must reach the horse, or he cannot have the disease. The disease does not arise from fatigue, hunger, or thirst. There is some evidence that horses weakened by a long trip like this, without rest, food, or water, would be less capable of throwing off disease than fresh well-fed horses. But this surely does not amount to proof that this violent, highly contagious disease could have been repelled by these horses, had they landed in Catskill 5 hours sooner. Assume, then, that the defendant was negligent in detaining the horses on the road 5 hours beyond the 36 provided by the contract, where is the evidence to show that this negligence caused the horses to be sick?

There is no such evidence, and therefore the verdict is without support, and must be reversed. All concur.