WILLIAM PLASS, Respondent, v. WILLIAM M. BARRETT, as President of THE ADAMS EXPRESS COMPANY, Appellant.

Third Department, December 28, 1917.

Carriers — negligence — liability of express company for negligent delay in transportation of horses resulting in their sickness and death — evidence — effect of request by shipper for extension of period of confinement without unloading.

In an action by a shipper against a carrier for negligence it appeared that the plaintiff shipped by an express company, of which the defendant is president, a carload of horses; that with close train connections and good management the journey might have been made within from twenty-four to twenty-eight hours, but fifty-five hours were consumed; that when the horses reached their destination they were in a weakened, enfeebled condition, one died almost immediately and four others within two weeks, three of them having developed pneumonia within a day or two after they were unloaded; that the contract released the company from all liability for delay or injuries to the said animals unless caused by the company or by the negligence of its agents or employees, and that delay was caused by defects in the cars, and there was no evidence that the company used any care by inspection or otherwise in the selection thereof.

*Held*, on all the evidence, that there was a negligent delay in the transportation of the horses causing sickness and death among them for which the

defendant is responsible, but the judgment should be modified by deducting the amount allowed for the death of two of the horses, there being no evidence connecting their death with the delay in transportation.

A request by the plaintiff pursuant to the Federal statute that the period of confinement of the animals without unloading be extended from twenty-eight to thirty-six consecutive hours, was not an agreement that the express company might consume thirty-six hours in the journey.

APPEAL by the defendant, William M. Barrett, as president of The Adams Express Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Columbia on the 9th day of April, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*George W. Smyth* and *Edward V. Conwell*, for the appellant.

*Duntz & Herzberg* [*R. Monell Herzberg* of counsel], for the respondent.

COCHRANE, J.:

On April 28, 1916, the plaintiff shipped by the Adams Express Company, of which the defendant is president, a carload of twenty-six horses and two mules from Circleville, O., to Linlithgo, N. Y. With close train connections and good management this journey might have been made within from twenty-four to twenty-eight hours. Instead thereof, fifty-five hours were consumed on the journey. When the horses reached their destination they were in a weakened and enfeebled condition, one died almost immediately and four others died within two weeks, the evidence showing that three of them developed pneumonia within a day or two after they were unloaded.

The shipping contract releases the express company from all liability for delay or injuries to the said animals unless such delay be caused by the express company or by the negligence of its agents or employees. Under the instructions of the trial justice a jury has found that there was a negligent delay in the transportation of the horses for which the defendant is responsible and that such delay caused the sickness and death of the five horses.

The horses left Circleville at six-forty o'clock in the evening

of April twenty-eighth, in time to connect at Trinway, O.,
with train No. 34, due in Jersey City at two-fifty-two o'clock
in the afternoon of the following day.   They reached Trinway
in time to make such connection but for some reason the
conductor of train No. 34 refused to attach the car in question
to his train.   The plaintiff testified that the agent of the
defendant who made the shipping contract at Circleville
promised that the horses would go on train 34.   If for any
reason the agent could not make such an arrangement he
should not have started the horses on their journey until
later, but his testimony shows that he made no effort to make
such an arrangement.   The horses were consequently delayed
at Trinway four or five hours while waiting for another train
and were subsequently delayed at Pittsburgh and Philadelphia,
so that they did not arrive at Jersey City until about two
o'clock in the morning of Sunday, April thirtieth.   There
was a delay of about seven hours at Pittsburgh, due to a
broken pedestal on the car on which the horses were traveling.
This car was provided by the express company.   It had been
arranged before leaving Circleville by the defendant's agent
that a float would be in readiness to transport the horses
across the river from Jersey City to New York so that they
could continue their journey up the river to Linlithgo.   The
plaintiff accompanied the horses in person and on arriving
in Jersey City early Sunday morning found that no prepara-
tions had been completed for transporting the horses across
the river.   He went to the New York office of the defendant's
company as soon as it opened, and was there informed that
the horses would cross the river at nine o'clock.   He then
proceeded to Linlithgo and procured assistance to unload the
horses on their arrival and waited at the station from six
o'clock in the evening of April thirtieth, until midnight, when
he went home, returning again at six o'clock in the morning
of May first.   In the meantime the horses had arrived at
about two o'clock.   They had been detained at Jersey City
and New York about thirteen hours and the journey from
New York to Linlithgo, due to a hot box in the car on which
the horses were traveling, had taken about eleven hours when
it might easily have been made in four or five hours.   The
car provided by the express company at Circleville was in

such condition that it could not continue the journey from Jersey City and the horses were transferred at that place to the other car which developed the hot box and still further delayed the transportation. There is no evidence that the company used any care, by inspection or otherwise, in the selection of either car with a view to ascertaining that its condition was such that it would not delay the journey. From the foregoing synopsis of the evidence it is apparent that the finding of the jury that the unusual delay was due to the negligence of the defendant rests on a sufficient foundation.

The plaintiff agreed to care for, feed and water the animals during transportation. Pursuant to the provisions of chapter 3594 of the act of Congress of June 29, 1906 (34 U. S. Stat. at Large, 607), the plaintiff also requested that the period of confinement of the animals without unloading be extended from twenty-eight to thirty-six consecutive hours. This was not an agreement that the express company might consume thirty-six hours in the journey but was merely a compliance with the Federal requirement that if for any reason there was a delay, the animals might be confined without unloading for thirty-six hours. Otherwise, it would have been the duty of the express company to unload and feed them after twenty-eight hours. It is true that the plaintiff did not himself furnish the horses any food or drink, but he did not anticipate nor was he bound to anticipate the unusual delay at Jersey City, and the unusual delay in transporting the horses from New York to Linlithgo. The express company caused the horses to be unloaded, fed and watered at Jersey City, and five hours of the delay at that place is excused because of that fact. This action of the company in unloading, feeding and watering the horses was perhaps in deference to the Federal requirement, the thirty-six hours of confinement of the animals having expired, and perhaps was due in part to the fact that the defective car in which they were traveling made it necessary to transfer them to another car. The question, however, of the plaintiff's contributory negligence was carefully and fully submitted to the jury by the trial justice, and they have found no negligence on his part and no question as to his contributory negligence is raised on this appeal.

Did the delay in transportation cause the sickness and

death of the horses? One of the defendant's witnesses, who fed and watered the horses at Jersey City, gave definite testimony that the horses were then in apparently good condition. If so, they must have been in equally good condition when they left Circleville. It must be remembered that the horses might have been delivered at Linlithgo before they reached Jersey City, and if they were in good condition at Jersey City, as the witness of the defendant stated, they would have been in equally good condition at Linlithgo if they had been delivered there earlier than when they in fact reached Jersey City. The evidence is ample, however, that when they were unloaded at Linlithgo they were plainly and noticeably not in good condition and the inference at once suggests itself from their good condition at Jersey City that the delay which the jury has found to have been unnecessary and unjustifiable, was responsible for their poor condition at Linlithgo. Dr. Luff, a veterinary surgeon, examined the horses a few hours after they were unloaded and had three of them in his charge until they died, as he says from pneumonia. He was called as a witness for the plaintiff and finally testified at the instance of the defendant on cross-examination that it is natural for a horse on a railroad journey to be frightened and nervous, and consequently rendered more susceptible to the germs of pneumonia which are in the animal at all times, and that when the horse is weakened and his vitality lowered, the germs become more virile and active and pneumonia is more liable to develop. This testimony was uncontradicted. It is quite apparent that the length of a railroad journey may, therefore, be an important factor in the development of this disease. The longer the journey the more susceptible to the disease does the horse become. Of course, it is possible that the horses might have had pneumonia irrespective of the length of the railroad journey. Medical science whether applied to man or beast is not exact. In the nature of things the plaintiff could not with mathematical definiteness produce evidence that his horses would not have sickened and died if their journey had been only about half as long. But the evidence and the facts raised a question for the consideration of the jury and it was within their province to draw the proper inferences, and they have

found on what seems to be sufficient evidence that the sickness. of the horses was the natural and reasonable result of their procrastinated railroad journey.

The defendant relies strongly on *Haner* v. *Fargo* (166 App. Div. 466). There is a wide difference between the two cases. In that case the plaintiff stipulated that the defendant might have thirty-six hours to make the transportation and there was a delay of only five hours beyond the stipulated period. The horses developed a highly contagious disease which must have been communicated to them before they started on their journey, and the evidence failed to show that the comparatively slight delay of five hours was responsible for this contagious disease. In the instant case there was a delay of about twenty-five hours, exclusive of the five hours at Jersey City when the horses were being fed and watered, or in other words the journey consumed approximately double the necessary time of about twenty-five hours within which it might have been made, and the disease was such that it could naturally and reasonably result from this delayed journey.

The judgment, however, cannot be sustained for its full amount. The liability of the defendant was limited to $100 for each horse. The jury rendered a verdict which included that amount for each one of the five horses which died, and $80 for the services of the veterinarian paid by the plaintiff, and $42 paid by him for other services because of the sickness of the horses, amounting in all to $622. One horse died almost immediately after being unloaded, another was sold by the plaintiff and thereafter died. These two horses were not attended by Dr. Luff and he does not claim to know what caused their death. There is no evidence that they had pneumonia or connecting their death with the delay in their transportation. Two hundred dollars must, therefore, be deducted from the judgment.

The judgment should be modified by deducting therefrom $200 as of the date of its entry, and as so modified the judgment and order should be affirmed, without costs.

Judgment modified by deducting therefrom $200 as of the date of its entry, and as so modified judgment and order unanimously affirmed, without costs.