HENRY H. WALRATH, Respondent, v. AMERICAN RAILWAY EXPRESS COMPANY, Appellant.

Fourth Department, May 19, 1926.

Carriers — carriers of livestock — action to recover damage to interstate shipment of horses based on delay in furnishing car (Interstate Commerce Act, § 1, subds. 3–6, 10, 11, as amd. by Transportation Act of 1920, §§ 400, 402; Railroad Law, § 54) and failure to unload for rest, food and water, as required by statute (Federal Cruelty to Animals Act) — trial — instructions — error to leave question to jury whether defendant failed to furnish car within reasonable time without adequate charge as to statutory duty — general verdict in favor of plaintiff rendered — new trial ordered — horses were not unloaded for forty-two hours — question for jury under facts whether defendant is responsible for violation of statutory duty — proof of damages under second cause of action is unsatisfactory.

In an action to recover damages based on the failure of the defendant to furnish a car for the shipment of horses within a reasonable time, and also on the failure of the defendant to comply with the statute (Federal Cruelty to Animals Act) requiring the unloading of the horses for rest, food and water, the action of the court in leaving to the jury the question whether or not the defendant failed, without legal excuse, to furnish a car within a reasonable time, without charging the jury as to the statutory duty of carriers to furnish cars promptly on demand, and to transport goods for shippers with reasonable diligence and without unfair discrimination (Interstate Commerce Act, § 1, subds. 3–6, 10, 11, as amd. by Transportation Act of 1920, §§ 400–402; and Railroad Law, § 54) constituted error, for the jury could not properly determine the matter without a full charge as to the quality of the carrier's obligation in this respect.

Since the jury awarded the plaintiff a general verdict, it is impossible to say what amount of damages the jury assessed upon the first cause of action and, therefore, in view of the error stated, a new trial is necessary.

The contention by the plaintiff that the first cause of action was eliminated by a request to charge on the part of the defendant, acceded to by the plaintiff, and that, therefore, the error was obviated, cannot be sustained, since the request to charge was that no binding contract to furnish a car existed until the uniform express receipt was signed. This charge had no effect on the general charge, for the jury had already been instructed that the obligation to furnish a car did not necessarily rest upon an agreement with the local agent, and, therefore, the jury might still find, notwithstanding the requested charge, that the defendant failed without legal excuse to furnish a car within a reasonable time.

As to the second cause of action based on the failure of the defendant to unload the horses for rest, food and water at least every twenty-eight hours, or under certain circumstances at least every thirty-six hours, as required by the Federal statute (Federal Cruelty to Animals Act), the evidence shows that the car was shipped from Chicago on a train that did not stop at Herkimer, the point of destination; that twenty-four and one-half hours after shipment from Chicago the car arrived in Utica, where it was cut out to await a local train for Herkimer; that the shipper who accompanied the horses left the car in Utica with notice to the defendant; that the horses did not arrive at their destination at Herkimer, a distance of about fifteen miles from Utica, until about seventeen hours thereafter, and that during the entire trip the horses were not unloaded for food or water. Under the facts, having in view the statutory obligation of the defendant, the mistake in train at Chicago, the delay in Utica, the abandonment of the horses by the shipper with notice to the carrier, and the time expiring before they were finally brought to their destination, questions of fact were presented as to the responsibility of the defendant to the plaintiff, for damage resulting from the violation of the statutory obligation.

The proof of damages under the second cause of action was unsatisfactory, and in view of the fact that the extent to which injury resulted from lack of feeding, watering and resting at Utica was so much a matter of conjecture, a new trial is required on this ground also.

CLARK, J., dissents, with opinion.

APPEAL by the defendant, American Railway Express Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Herkimer on the 27th day of February, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the 24th day of March, 1924, denying defendant's motion for a new trial made upon the minutes.

*Willis & Guile* [*W. W. Guile* of counsel], for the appellant.

*James P. O'Donnell,* for the respondent.

SEARS, J. The complaint alleges two causes of action. The first is for damage amounting to $302.59 arising from defendant's failure for a period of eight days to furnish plaintiff a car for the transportation of horses as agreed. The second is for damages

amounting to $903.92 in all for failure to furnish plaintiff with a proper car for the transportation of horses, and for neglect of its duty properly to feed, water and rest the horses during transportation. The answer besides denying all negligence and breach of duty contains affirmative defenses, as to the second cause of action, of contributory negligence, release by contract from the duty to feed and water the horses, and an assumption of that duty by the plaintiff. A jury verdict of $800 was awarded the plaintiff.

Railroad carriers are under a duty to furnish cars promptly on demand to transport goods for shippers when this can be done with reasonable diligence and without unfair discrimination. So the statutes of the United States provide. (Interstate Commerce Act [24 U. S. Stat. at Large, 379], § 1, subds. 3, 4, 5, 6, 10, 11, as amd. by Transportation Act of 1920 [41 id. 474, 475, 476], §§ 400, 402. See Hepburn Act [34 U. S. Stat. at Large, 584], § 1; Commerce Court Act [36 id. 544, 545], § 7, and 40 id. 101, chap. 23, amdg. said Interstate Commerce Act, § 1. See, also, Barnes Federal Code Supp. § 7884, subds. 3, 4, 5, 6, 10, 11; U. S. Comp. Stat. Supp. § 8563, subds. 3, 4, 5, 6, 10, 11.) The laws of this State are to the same effect. (Railroad Law, § 54, as amd. by Laws of 1915, chap. 564.)

The learned trial court did not call to the attention of the jury what the duty of the defendant was in this respect, but left the matter for the jury's determination by stating merely that the question was, " did the defendant fail without lawful excuse to furnish a car in a reasonable time? " The court explained that as bearing on this question, all the evidence relating to the surrounding circumstances was to be considered and not any agreement or talk with the station agent alone. No instruction was offered as to how the jury was to determine whether the delay was reasonable and excusable or otherwise. No reference was made to the obligation to serve all without discrimination. We deem this presentation so loose and unsatisfactory as to constitute error. Whether there was here a breach of the defendant's statutory duty was a question of fact. (*Dobbins* v. *Syracuse, etc., R. R. Co.,* 157 App. Div. 80; affd., 215 N. Y. 674; *Pennsylvania R. R. Co.* v. *Puritan Coal Co.,* 237 U. S. 121.) But the jury could not properly determine the matter without a full charge as to the quality of the carrier's obligation in this respect.

It is contended by the plaintiff that the error is obviated and, as we understand him, the first cause of action eliminated by a charge made in response to a request of defendant's counsel as follows: " [Defendant's counsel]: I ask Your Honor to say to the jury there was no binding contract to furnish a car between this

defendant and plaintiff until the uniform express receipt * * . * was signed. [Plaintiff's counsel]: I have no objection. The Court: I so charge." This had no effect on the foregoing charge. The jury had already been instructed that the obligation to furnish a car did not rest necessarily upon an agreement with the local agent. The jury might still find that the defendant failed without lawful excuse to furnish a car in a reasonable time.

As it is impossible to say what amount of damages the jury assessed upon the first cause of action, a new trial is necessary for the error pointed out. (*Piper* v. *N. Y. State Railways,* 185 App. Div. 184; *Hawn* v. *Malcolm,* 171 id. 120.)

In respect to the second cause of action these facts are established: The horses were loaded into the car on January 16, 1921, and the train left Fergus Falls, Minn., at nine-thirty-five A. M. on that day. The horses arrived in Chicago during the forenoon of the seventeenth. While the car was in Chicago an expressman built two partitions in the car. Plaintiff himself had repaired the car somewhat at Fergus Falls. The horses were in good condition when the train reached Chicago. After the car had been fitted the horses were reloaded at five P. M. and the train carrying the horses left Chicago at about eight-thirty P. M. on the seventeenth. By mistake the car with the horses was attached at Chicago to a train which did not stop at Herkimer, N. Y., plaintiff's destination. The train with the horses arrived at Utica at nine P. M. on the eighteenth. The plaintiff had accompanied the horses from Fergus Falls to Utica. After the car with the horses reached Utica, the plaintiff was told by a representative of the defendant that the Herkimer train would reach Utica at ten P. M., and again a little later he was told that it would not arrive to take the horses until midnight. He became impatient and said to a representative of the defendant, " It is up to you folks to look out, I am going home. You send them [the horses] when you get ready, I don't care what you do." Thereupon he left the train, and went home to Herkimer, reaching his home about midnight. Utica is fifteen miles from Herkimer. About three hours and a half elapsed between the time the horses were loaded at Chicago and the starting of the train. The journey from Chicago to Utica on this occasion consumed twenty-four and one-half hours. The horses were not shipped out of Utica until the morning of the nineteenth, and reached Herkimer at eleven-thirty A. M. that day. During the entire period from the time the horses were loaded at Chicago until their arrival at Herkimer, N. Y., lasting about forty-two hours, the animals were without food or water, or unloading for rest. The substantial basis of the plaintiff's claim is in the

occurrences between the arrival of the horses in Utica and their arrival in Herkimer, a period of fourteen hours.

The Federal Cruelty to Animals Act, also known as the Twenty-Eight Hour Law (34 U. S. Stat. at Large, 607, chap. 3594, § 1; Barnes Federal Code, § 8295; U. S. Comp. Stat. § 8651) prohibited a railroad or common carrier such as the defendant from confining animals in a car for longer than twenty-eight consecutive hours without unloading them into pens for rest, water and feeding. The period under certain circumstances might be lengthened to thirty-six hours. The statute was enacted, in part, at least, to prevent cruelty to animals during transportation. ( *United States v. Atlantic Coast Line R. Co.,* 173 Fed. 764; *Chicago & N. W. R. Co.* v. *United States,* 246 U. S. 512, 517.) A penalty is prescribed for disobedience. (34 U. S. Stat. at Large, 608, chap. 3594, § 3; Barnes Federal Code, § 8297; U. S. Comp. Stat. § 8653.)

Under the uniform contract of carriage, known as the " Uniform Contract for Ordinary Live Stock," signed by the plaintiff, he, being the shipper, agreed, inasmuch as he accompanied the animals, to load, transport and unload the horses at his own risk, and to take care of, feed and water them, during transportation, whether delayed in transit, or otherwise. The plaintiff further agreed to absolve the carrier from liability resulting in transit from the conduct or propensities of the animals. There is no claim of any reservation against damages arising from delay in forwarding or from negligence in general. There could be no reservation of avail against negligence.

" The rigor of this liability [the common-law rule against the carrier] might be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier." (*Adams Express Co.* v. *Croninger,* 226 U. S. 491; *Missouri K. & T. R. Co.* v. *Harriman,* 227 id. 657.)

Under the statute — considering the humanitarian purpose for which it was enacted — a carrier cannot escape liability so far as the penalty is concerned by contracting with the shipper to take care of the animals during transportation. In actions between a shipper and a carrier, however, there is apparent conflict in the authorities as to their reciprocal rights and obligations. (*Oregon-Washington, etc., Co.* v. *United States,* 205 Fed. 337; *Haner* v. *Fargo,* 166 App. Div. 466; *Plass* v. *Barrett,* 181 id. 131; *Fluckiger* v. *Chicago & N. W. R. Co.,* 99 Neb. 6.) The carrier must, of course, furnish to the caretaker a reasonable opportunity to unload, feed, water, and rest the animals and it has been held that the failure of the owner or caretaker to request or demand such opportunity does not as a matter of law excuse the carrier from liability. (*Southern Pac. Co.*

v. *Arnett*, 126 Fed. 75.)    The Federal statute expressly provides that animals so unloaded shall be properly fed and watered during such rest, either by the owner or caretaker, or in case of his default in so doing then by the carrier.    (34 U. S. Stat. at Large, 608, chap. 3594, § 2; Barnes Federal Code, § 8296; U. S. Comp. Stat. § 8652.)

Under the facts appearing in the present case, having in view the statutes, the contract, the mistake in train, the delay in Utica, the abandonment of the horses by the shipper, with notice to the carrier, and the time expiring before they were finally brought to their destination, we are of the opinion that questions of fact were presented as to the responsibility of the defendant to the plaintiff for damages resulting from the violation of the statutory obligation.

The evidence does not warrant an award for damages for any defect or deficiency in the car or its equipment.    There can, of course, be no recovery caused by the conduct or natural propensities of the animals.

The proof of damages under the second cause of action was unsatisfactory.    The extent to which injury resulted from lack of feeding, watering and resting at Utica was so much a matter of conjecture that it furnishes additional reasons for ordering a new trial.    (*Missouri Pac. R. Co. v. Texas & P. R. Co.*, 41 Fed. 913.)

The judgment should be reversed upon the law and the facts, and a new trial ordered, with costs to the appellant to abide the event.

Hubbs, P. J. and Taylor, J., concur; Clark, J., dissents in a memorandum and votes for affirmance; Davis, J., not voting.

Clark, J. (dissenting).    I dissent from the conclusions of the majority of the court and vote for affirmance.

Plaintiff shipped a carload of horses from Fergus Falls, Minn., to Herkimer, N. Y., by the defendant's express service.    The shipment left Fergus Falls January 16, 1921, about nine-thirty A. M. It arrived at Chicago on the forenoon of January seventeenth, and at that point the horses were unloaded, fed and watered.    The car left Chicago at eight-thirty P. M. January seventeenth, and arrived in Utica about nine P. M. January 18, 1921.

The car had been put on a train that did not stop at Herkimer so it was cut out of the train at Utica, and was detained there from about nine P. M. January eighteenth, until after ten o'clock in the morning of January nineteenth, when it was attached to a train that stopped at Herkimer, reaching the latter point about half past eleven on the morning of January nineteenth.    The horses had not been unloaded, fed or watered after leaving Chicago at eight-thirty P. M. January seventeenth.

The jury could find that the shipment was transported from Chicago to Utica in a reasonable time, but because of the fact that it had been placed in a train that did not stop at Herkimer it was cut out of that train at Utica and there was a delay of over fourteen hours before the car was attached to a train that stopped at Herkimer.

The jury could find that Herkimer is only fifteen miles from Utica and under ordinary circumstances it would take less than an hour for a train to travel between these two points; that on the night the shipment reached Utica plaintiff was told by the man in charge of the defendant's office there that a train would arrive at ten o'clock that night that would take the horses to Herkimer, and he later told plaintiff that there would be a train at twelve o'clock that would take the horses to Herkimer, but they were not taken from the Utica yards till after ten o'clock in the forenoon of the next day, reaching Herkimer at eleven-thirty A. M., over fourteen hours after they had been sidetracked at Utica.

Plaintiff based his claim for damages on delay of the defendant in furnishing a car within a reasonable time after he had ordered it at Fergus Falls, and also on account of defendant's negligence in failing to transport the car to its destination within a reasonable time.

At the conclusion of the main charge, the court at the request of defendant charged that there was no binding contract between the parties to furnish a car until the uniform express receipt had been signed. The car was furnished at Fergus Falls on January 15, 1921, whereas the uniform express receipt was dated January 16, 1921. Under this charge the claim for damages for failure to furnish the car within a reasonable time after it had been ordered by plaintiff was eliminated from the case. It was the last word of the court to the jury, and I do not see how the form of the verdict could embrace a cause of action that had been specifically charged out of the case at defendant's request.

That left the question of the alleged negligence of defendant for failure to transport the car in a reasonable time for the jury.

When the car reached Utica it was not placed at a chute where the horses could be unloaded, fed and watered, but was left in the yard at a considerable distance from any such facilities, and plaintiff could not be charged with carelessness in failing to unload, feed and water the horses at a point where he could not unload them for any purpose.

Attaching the car in which the horses were shipped to a train that did not stop at the destination point was certainly not the fault of the plaintiff, and I think it was for the jury to say whether

defendant was negligent in leaving the car in the railroad yard at Utica within fifteen miles of its destination, which distance could ordinarily be traveled in less than an hour, and leaving the horses in the car at a place where unloading was impossible, and allowing them to remain there fourteen hours without food and water before shipping them on to their destination. (*Plass* v. *Barrett,* 181 App. Div. 131.)

It was also for the jury to say under the evidence whether the claimed damage to the horses was the result of defendant's negligence in delaying the shipment at Utica.

The findings of the jury on these questions were supported by ample evidence.

The judgment and order should be affirmed, with costs.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellant to abide the event.